## William Shaw v. George Hoffman.

*Statutes adopted from those of another state.*    Our legislature having adopted the statute (*Comp. L.* (1857) § 4717), giving treble damages to any person who shall be "ejected or put out of any lands or tenements in a forcible and unlawful manner, or, being put out, be afterwards holden and kept out by force, or with strong hand," from the statutes of New York, it will be presumed to have intended to adopt it, so far as no alteration was made, in its already established and well settled meaning.

*Forcible entry and detainer : Treble damages : Statute construed.* According to such well settled meaning, the statute was not intended to apply to a mere trespass, however wrongful; the entry or the detainer must be riotous, or personal violence must be used or in some way threatened, or the conduct of the parties guilty of the entry or detainer must be such as in some way to inspire terror or alarm in the persons evicted or kept out; the force contemplated by the statute is not merely the force used against or upon the property, but force used or threatened against persons, as a means or for the purpose of expelling or keeping out the prior possessor.

*Breaking door of barn or outhouse : Forcible entry and detainer.* The breaking the door of a barn or outhouse, or the tearing it down and removing it, and the taking and remaining in possession, does not, of itself, unaccompanied with any force toward any person, actual or threatened, and without creating in any way an apprehension of personal violence, constitute the forcible entry or forcible detainer contemplated by the statute.

*Bill of exceptions : Presumption as to the evidence.* Where a bill of exceptions sets out what the evidence tended to show in reference to any subject matter, it will be presumed that it states all that it tended to prove in reference to such subject matter, or at least all that could affect any question to be raised upon that subject, and no presumption will arise in support of a judgment, that there was evidence, other than that so set out, to warrant the conclusion upon which the judgment was based.

*Declaration : Treble damages : Judgment : Single damages.* A declaration upon said statute for treble damages will not support a judgment upon the verdict, of single damages, as for a trespass at common law.

SHAW *v.* HOFFMAN.

*Damages for loss of profits, etc.* A tenant who has unlawfully been evicted from a barn which he occupied as a livery and boarding stable, by his landlord, who destroyed the barn, may recover damages (for the proper length of time) for the loss of profits from boarding the horses of others, as well as for the difference in cost of keeping his own horses and of hiring them boarded, where the evidence tends to show that such damages were the natural and proximate consequence of the trespass and eviction complained of; and in a case coming within the statute such damages would be proper to be trebled. Under the lease in this case the length of time for which the lessee, upon being unlawfully evicted and kept out of the premises under the circumstances of this case, could recover such damages, would be from the date of the eviction (July 11) until the tenancy had been properly terminated by notice (Aug. 31).

*Damages to personal property.* Damages to personal property in a barn from which one has been unlawfully evicted and kept out, cannot be trebled under the statute.

*Notice: Termination of tenancy.* A tenant of a portion of a lot under a lease containing a clause whereby the lessee agreed to give up the lease if the lessor, his heirs or assigns, should conclude to build on said premises, is not terminated by the landlord's taking possession of another portion of the lot, not leased, for the purpose of building on that; such taking possession was not even notice to the lessee of the lessor's intention to build on the leased portion.

*Lease construed: Tenancy upon condition: Notice.* A lease for five years containing such a clause does not create a tenancy at will strictly, but rather a tenancy upon condition; and the lessee is entitled to reasonable notice of the lessor's determination to build, and of his desire that the lease should be given up under said clause; and in determining what is a reasonable notice, the analogy of notices to terminate a tenancy at will under the statute will govern.

*Termination of tenancy: Notice.* The actual taking and retention of the possession of the premises and commencing to build upon them, though a trespass and wholly wrongful, was, from the time the lessee became aware of it, a clear notice to him of the lessor's wish to terminate the tenancy and to have possession of the premises, and had the same effect, as notice, that a formal notice given at that time would have.

*Heard April 13. Decided July 9.*

Error to Wayne Circuit.

Hoffman brought his action of trespass in the Wayne circuit court against Shaw to recover treble damages under *chapter 137, Comp. Laws of 1857*, entitled, "Of trespasses on lands," alleging in the first count of his declaration, that he, being in peaceable possession of the rear end of lot 33, section 7, of the Governor and Judges plan of the city of Detroit and the entire barn and appurtenances thereto belonging, the defendant, on the 11th day of July, 1868, forcibly entered in and upon said premises, contrary to said statute, and wholly and entirely ejected the plaintiff there-

from; and that the defendant then and there broke, injured, and destroyed certain personal property of the plaintiff then and there being, and other wrongs, against the peace and contrary to the statute, etc.

The second count was the same in substance, except that it alleged that the plaintiff then and there, in a forcible manner, put out the said plaintiff, and by force and with strong hand, kept and continued the said plaintiff so put out, for a long time, to wit: until the 21st of January, 1869, by means whereof the plaintiff, during the time aforesaid, lost and was deprived of the profits, benefits, etc., which might and otherwise would have arisen and accrued to him from the possession, use, occupation, and enjoyment of said premises.

The third count was substantially like the second, except that, after alleging his possession, it avers that the plaintiff was then and there the keeper of a livery, hack, and boarding stable, and was carrying on the business of boarding horses and of keeping and taking care of carriages and horses for hire, and those owned by himself to be let for hire, from which said business a large profit accrued to the plaintiff and would have accrued to him from the 11th day of July, 1868, to January 21, 1869, to wit: two thousand dollars; alleges the entry of defendant to have been unlawfully and forcibly made, contrary to the statute (which is referred to), and that by force and with strong hand he hath kept the plaintiff out of said premises, whereby, etc.; and that plaintiff also thereby lost and was deprived of the profits, advantages, etc., which might, and otherwise would, have accrued to him, etc. The fourth count was substantially like the third, so far as any question presented by the case *is* involved.

Shaw (defendant below) pleaded the general issue and gave notice that he would prove the lease hereinafter men-

tioned, and that he did conclude to, and did commence to, build on the lot,—which the plaintiff well knew, and did leave and surrender the premises of his own free will and accord; that plaintiff, while in possession, permitted large quantities of water to run, settle in, and soften, the ground under and around the barn, etc., by reason of which the wall settled and slid off into a cellar the defendant was digging near it on part of the lot not leased, and that the barn thereby became untenantable by plaintiff's own act.

"On the trial," as the bill of exceptions states, "the plaintiff introduced evidence tending to show that he was in possession [of the premises described in the declaration] as tenant only of the defendant, by virtue of a written lease, dated January 21, 1868, for the term of five years from March 1, 1868, at a rent of three hundred dollars per year, payable monthly in advance; that he paid the rent according to the terms of the lease, the last payment having been made July 2, 1868, and being in full for the rent up to August 1, 1868; that defendant never returned, nor offered to return, to plaintiff the rent for the month of July, 1868; that there was a clause in said lease by which the plaintiff agreed to give up said lease, if the said Shaw (defendant), his heirs or assigns, should conclude to build on said premises; and the lease gave the right to re-enter on breach of any covenant therein contained; that the plaintiff used such barn for a livery and boarding stable; that in April or May, 1868, the defendant, with the intention of erecting stores on the front part of said lot [not leased], removed some wooden buildings that were standing thereon, and afterwards commenced excavating for a cellar; which excavation extended (as differently estimated by the witnesses), to within from six inches to five feet from the westerly wall of said barn; that on the morning of the 11th of July, 1868, in consequence thereof, the earth.

between the excavation of said cellar and the wall of the barn gave way, and a portion of said west wall fell down, and a portion of the roof fell in, and plaintiff, with the assistance of some men in his employ, removed from the barn into the street, his carriages, horses, and such property as might be injured by the falling of any more of said roof or wall, locked the door, and went to attend to his daily business, taking with him his horses which he used in his business, but leaving some of his property in said barn; that when he went back at noon, he found the door of the barn broken open, and the defendant then in possession of the barn, and the balance of the property thrown into the street by defendant; that, on the second day, defendant commenced tearing the barn down; that defendant then enlarged the cellar and erected his stores covering a portion of the ground that had been covered by the barn."

Plaintiff then introduced testimony tending to show that the cost of keeping each of his horses in his own barn—feed, care, rent of barn, all included—was three dollars per week; that, from being put out of possession, he was obliged to hire them boarded at an expense of five dollars per week, which was the best he could do; that, by the falling of the barn, his carriages and wagons and property were injured, stating the amount; that by being out of the barn, he lost the profits he would have made from the boarding of the horses of others; and evidence was given tending to show the amount of such profits lost. It seems from the bill of exceptions that the evidence of loss or damage, as well in reference to his own horses, as to the boarding of those of others, covered the entire period from the 11th day of July down to the 21st of January, or to the commencement of the action.

Several exceptions were taken to refusals to charge as requested, and to certain charges given as modifications of

other requests, which are given in the opinion, in their proper place in disposing of the questions raised.

The jury rendered a verdict of guilty of the several trespasses charged, and assessed the plaintiff's damages as follows: " and they assess the damages of the said plaintiff by reason thereof, over and above his costs and charges etc., at the sum of one hundred dollars for the injury done to his personal property; and the damages of the said plaintiff by reason of his eviction by the said defendant and the additional expense he was put to, being compelled to board his own horses elsewhere, at the sum of one hundred and sixty-five dollars; and the damages of the said plaintiff by reason of his said eviction by the said defendant and the loss of the amount which he would have made by boarding horses belonging to other persons, and which he lost by being thus evicted, at the sum of one hundred and twelve dollars."

The last two items of damages were trebled by the court, and a judgment rendered for plaintiff for nine hundred and thirty-two dollars and fifty cents.

*D. C. Holbrook,* for plaintiff in error.

*George H. Prentis* and *Theodore Romeyn,* for defendant in error.

CHRISTIANCY, CH. J.

The first question arises upon trebling the last two items of damages found by the verdict; and this depends upon the question, whether the evidence tended to show such an eviction of the plaintiff or such a holding or keeping him out of possession by the defendant, as is contemplated by section three of chapter 111, Rev. Stat. of 1846 (*Comp. L. 1857,* § *4717*).

This section provides, "If any person shall be ejected
or put out of any lands or tenements in a forcible and
unlawful manner, or, being put out, be afterward holden
and kept out by force, or with strong hand, he shall be
entitled to maintain an action of trespass, and shall recover
therein three times the amount of damages assessed by the
jury or a justice of the peace in the cases provided by
law."

If this were a new statute, or its meaning had not been
settled by judicial decision, it might, perhaps, be held by
its language to cover the somewhat aggravated trespass
which the evidence in this case tended to show the defend-
ant to have committed.     But this statute seems to have
come down to us from statute of *8 Henry VI., ch. 9*, and to
have been adopted into our statutes from the *Revised Stat-*
*utes of New York, Vol. 2, part 3, title 6, sec. 4,* where it
appears in the same form, except that it there contains the
word "disseized," which was omitted in our statute, as
noticed in this case (*21 Mich., 155 and 156*); and its mean-
ing had been defined and the extent of its application
settled, by a long course of judicial decisions prior to its
adoption in New York.     And in the adoption of the
statute there, it never seems to have been doubted by the
courts of New York, that the legislature intended to adopt
it in the sense, and with the meaning, which had already
been given to it by the judicial decisions in England, which
in effect had become a part of the statute; and, in its
adoption from the statutes of New York by our legisla-
ture, we think they must be presumed to have intended to
adopt it in the same sense, and with the same extent of
application—so far as no alteration was made—which had
been given to it by the courts in England and in New York,
—in other words, its already established and well settled
meaning; and according to this well settled meaning the

statute was not intended to apply to a mere trespass, however wrongful; but the entry or the detainer must be riotous, or personal violence must be used or in some way threatened, or the conduct of the parties guilty of the entry or detainer must be such as in some way to inspire terror or alarm in the persons evicted or kept out,—in other words, the force contemplated by the statute is not merely the force used against, or upon, the property, but force used or threatened against persons, as a means, or for the purpose, of expelling or keeping out the prior possessor. And, though the breaking into a dwelling house occupied by a person or a family, being of itself calculated to excite terror or the fear of personal violence, may come within this statute,—and there is one case, hardly now regarded as law (*2 Roll. R. 2, Hill., XV. Jac.*), which held the breaking into a dwelling house to come within the statute, though no person was in the house,—there is not, it is believed, from the reign of Henry the Sixth to this day, either in England or the state of New York, a single adjudged case reported, in which the breaking the door of a barn or outhouse, or the tearing it down and removing it, and the taking and remaining in possession, would, of itself, constitute the forcible entry or forcible detainer contemplated by the statute, if unaccompanied with any force toward any person, actual or threatened, and without creating in some way an apprehension of personal violence. This whole subject, with the authorities bearing upon it, is so fully and ably examined by Judge Cowen, in *Willard v. Warren, 17 Wend., 257,*—a case very closely resembling the present, and decided some years before we adopted the statute here —that we think it quite unnecessary to go over the whole ground or to cite the authorities.

In the present case, though an aggravated trespass, there was no evidence tending to show any personal violence,

25 MICH.—22.

actual or threatened, any intimidation or show of force, any alarm or apprehension of it to the occupant or any one else; or that the plaintiff yielded to any such force or fear of it; and the case is, in no respect, stronger for the plaintiff below, than the case in *Wendell*, just cited, was for the plaintiff there.

But it is urged by the counsel for the defendant in error, that this point does not arise in the case; that the bill of exceptions does not purport to set out all the testimony; and that, inasmuch as the circuit judge must, in giving the judgment for treble damages, have found that there were such circumstances of force or violence as to bring the case within the statute, we must, in support of the judgment, presume there was evidence to warrant that conclusion.

The bill does not set out the evidence itself at all, in reference to the trespass and eviction, but merely states its tendency; and in stating what its tendency was in reference to the subject matter of the trespass and eviction, we must presume that it states *all* it tended to prove in reference to that subject matter, or at least, all that could affect any question to be raised upon that subject; since if there was any thing in the evidence tending to enlarge or modify the effect of what is stated upon the same subject, it would have been stated in the bill; and it would have been the duty of the counsel for the plaintiff below to insist upon its insertion in the bill, and the duty of the court to have inserted it.

The judgment was, therefore, in our view, clearly erroneous in trebling the damages. And, as all the counts of the declaration were upon the statute for treble damages, we think it would have been erroneous also to render a judgment upon the verdict, of *single* damages, as for a trespass at common law; since a verdict of guilty under

each of these statutory counts, if the instructions and rulings of the court had been all correct, would entitle the plaintiff to a judgment for treble damages, as a matter of right. See *Willard v. Warren, ubi supra,* where it was taken for granted no judgment would be warranted upon such a declaration, except the statute judgment; and see *Mooers v. Allen,* 2 *Wend.,* 247.

The preceding section (to that cited) of the statute would clearly warrant a judgment for single damages, when the trespass is casual or involuntary; but this section makes no equivalent provision.

There was no error in refusing to charge the jury, that they could not take into consideration or allow any profits the plaintiff would have made in boarding the horses of others; these (for the proper length of time) as well as the greater sum plaintiff had to pay for boarding his own horses, were, as the evidence tended to show, the natural and proximate consequences of the trespass and eviction complained of; and if the case had come within the statute allowing treble damages, it would have been right for the court to treble them. But the damages to the personal property could not be, and were not, trebled.

Nor was there any error in refusing to charge, that the plaintiff could not recover any damages under the terms of the lease, after the defendant took possession of the premises to build on part of the lot. Taking possession of part of the lot not leased, for the purpose of building on that, was no termination of plaintiff's tenancy, nor even notice to him that defendant intended to build on the leased portions. Plaintiff had paid, and defendant accepted, the rent for the whole month of July; and he never even offered to return the rent. The plaintiff's right was therefore absolute, to hold the property till the first of the next month; and eviction took place on the 11th of July.

Whether a return of the rent, or offer to return it, with a demand of possession for the purpose of building, would have altered the case, we need not at present determine.

But with reference to a new trial it may be proper to determine here, for what period or length of time the plaintiff was, upon the evidence, entitled to recover damages for loss of profits in boarding horses of others, and additional cost of boarding his own, or other injury to his business.

It is insisted by counsel for defendant in error, that the lease created a tenancy at will, and that plaintiff was therefore entitled to a month's notice to quit, the rent being payable monthly. But the lease was given for five years, with a clause in it by which the plaintiff agreed to give up the lease if the defendant should conclude to build on said premises. It was not, therefore, at the will of the lessee (plaintiff), but only at the will of the defendant (lessor), and even as to him not *strictly* at will, for he could exercise that will only on the condition precedent, that he had first concluded to build on the premises. A tenancy at will, properly so called, can exist only when it is equally at the will of both parties, each having the equal right to terminate the lease or tenancy at his option. This was a tenancy for *five years*, upon *condition*, that if the lessor should, before the end of the stated term, conclude to build upon the premises, and (as I think from the nature of the provision as well as its language) should give the lessee reasonable notice of such determination to build, and of his desire that the lease should be given up the term after such reasonable notice should cease.

This part of the condition, in reference to notice, is not, it is true, expressed, but I think it is clearly implied from the language, and from the nature of the condition expressed. 1st, *From the language*. The lessee, if the lessor

should "conclude to build," was to "*give up the lease.*" Clearly he could not be expected to give up the lease, until he had received notice of the lessor's conclusion or determination to build upon the leased premises; some notice therefore is *necessarily* implied; and as the length of time that such notice should be given is not fixed, it must be held to be a reasonable time. But, 2d, *From the nature of the provision itself.* Had the condition been made to depend upon some event over which neither party could exercise any control, or over which each could exercise an equal control, it might reasonably be said, that each took upon himself the risk of the happening of the event; and, therefore, that no notice should be required. But, as the event upon which the condition depended was one depending wholly upon the will of the lessor, and we must, in the absence of any thing to the contrary, presume that the parties acted with the motives and upon the considerations which, under such circumstances, would actuate men of common sense and ordinary prudence, we cannot suppose that the lessee understood that he was to leave and give up possession at a moment's warning, without any opportunity to get a place for his business elsewhere, or that the lessor expected that he would. Both parties must have supposed that some notice would be required; and as no length of time was specified, we must presume that the notice contemplated was for a *reasonable* time.

Now, in determining what is a reasonable time, we cannot do better than to adopt the time fixed by the statute in the case of tenancies at will, since, though this is not strictly a tenancy at will, not being equally at the will of each party, yet it was substantially at the will of the lessor, if he concluded to build, and depended upon his determination or will, as much as if it had been strictly a tenancy at will; and there is the same reason for requiring him to

give notice of his determination and of his desire to terminate the tenancy, and for the same length of time.

The statute (*Comp. L.*, *1857*, § *2807*) requires as a general rule, three months' notice to terminate the tenancy, but provides, that "when the rent reserved in a lease at will, is payable at periods of less than three months, the time of such notice shall be sufficient, if it be equal to the interval between the times of payment."

The rent by the present lease, was payable monthly in advance. It had been paid and retained; the lease was irrevocable till the end of July. No written or formal notice was given by the lessor, nor any verbal or written request to give up the lease. But the actual taking and retention of possession and commencing to build upon the premises, though a trespass and wholly wrongful, was certainly, from the time the lessee became aware of it (July 11), a clear notice to the lessee of the lessor's wish to terminate the tenancy and to have possession of the premises; and upon the question of notice should have the same effect as a formal notice given, or request made, at that time. Had a formal notice been given at that time, it could not have terminated the lease till the end of the month of August; the whole month of July having been paid for, it is quite clear, we think, that though the notice might be given on the 11th of July, it could have no effect during any part of that month; and the rent being payable monthly at the beginning of the month, the lessee had the right, by paying the rent on the 1st of August, to retain the premises for the whole of that month, but no longer; and damages cannot be recovered beyond that time.

The charge of the court, as given with modifications, in answer to defendant's fifth request, is open to the objection that, under it, the jury were authorized to find the same amount of damages, though the barn might have fallen by

plaintiff's own fault, if the defendant made a forcible entry afterwards, as if it had been made to fall by the fault of the defendant. But it is clear that if the barn fell through the plaintiff's own fault, the use of the premises *without* any subsequent *entry* or interference of the defendant, would have been worth much less to the plaintiff than if the barn had been standing.

There is an error in the verdict in twice assessing the damages for eviction, which probably resulted from a blunder in putting it into form; it is nevertheless a serious blunder, as we should be compelled to take the verdict as we find it; but as it is one not likely to be repeated, it requires no further comment.

The judgment must be reversed, with costs, and a new trial awarded.

CAMPBELL and COOLEY, JJ., concurred.

GRAVES, J., did not sit in this case.