FANNY B. LANE ET AL. v. JOHN F. RUHL.

[See 94 Mich. 474.]

*Summary proceedings—Treble damages—Landlord and tenant— Interest.*

1. Under How. Stat. § 8306, which provides that the complainant obtaining restitution of any premises under the provisions of that chapter (286) shall be entitled to an action of trespass or trespass on the case against the defendant, and may recover treble damages from the time of the forcible entry or forcible detainer, or of the notice to quit or demand of possession, as the case may be, a plaintiff who has recovered judgment of ouster from leased premises is entitled to treble damages, notwithstanding the finding of the jury that the defendant held possession because he in good faith believed that he had a lawful right so to do.

2. In determining the damages to which the landlord is entitled, interest should be allowed upon installments of rent from the time they became due and payable under the terms of the agreement, which is taken as the basis of recovery.

Error to Wayne. (Carpenter, J.) Argued October 10, 1894. Decided December 18, 1894.

Case. Plaintiffs bring error. Reversed, and judgment entered in this Court for plaintiffs. The facts are stated in the opinion and in 94 Mich. 474.

*Wells, Angell, Boynton & McMillan,* for appellants.

*S. S. Babcock (George X. M.- Collier,* of counsel), for defendant.

McGRATH, C. J. Plaintiffs, having brought proceedings against defendant to recover possession of certain premises, resulting in a judgment of ouster, affirmed by this Court (94 Mich. 474), now bring trespass on the case, under

How. Stat. § 8306, for damages. The jury brought in a general verdict of guilty, assessing plaintiffs' damages at $1,669.62, and in answer to a question submitted found that defendant held possession because he in good faith believed that he had a lawful right so to do. Plaintiffs thereupon moved the court for a judgment for treble the amount of the damages awarded. The court denied the motion. This raises the principal question in the case.

Plaintiffs insist that they are entitled, under the statute, as a matter of right, to treble damages, notwithstanding the special finding as to defendant's good faith. We have a number of statutes conferring the right to double or treble damages. By the terms of certain of them, the act done must be willful; others, after giving the right in general terms, provide that if it appear that the act was casual or involuntary, single damages only are recoverable; while others provide in general terms for the recovery, and do not in express terms make such recovery dependent upon the willfulness of the act, or except instances of casual or involuntary conduct, The statute in question here belongs to the latter class, and is as follows:

" The complainant obtaining restitution of any premises under the provisions of this chapter shall be entitled to an action of trespass or trespass on the case against the defendant, and may recover treble damages from the time of the forcible entry or forcible detainer, or of the notice to quit or demand of possession, as the case may be, and all other damages to which he may be entitled."

A number of cases involving the construction of other statutory provisions relative to increased damages have been before this Court. *Wallace v. Finch,* 24 Mich. 255; *Russell v. Myers,* 32 Id. 522; *Michigan Land & Iron Co. v. Deer Lake Co.,* 60 Id. 143; *Elliott v. Herz,* 29 Id. 202; *Shepard v. Gates,* 50 Id. 495; *Kilgannon v. Jenkinson,* 57 Id. 325. The first three cases arose under How. Stat. § 7957, relating to cutting or carrying away or injury to its

timber. Section 7958 provides that if it shall appear upon the trial that the trespass was casual and involuntary, or that the trespasser had probable cause to believe that the land was his own, single damages only shall be awarded. *Wallace v. Finch* was a case where defendant was in correspondence with the owner of the land with reference to its purchase, and, supposing that his letter accepting a proposition of sale had been received, entered upon the land and cut the timber. The Court held that, taking the sections referred to together, the intention of the Legislature was clear that the penal application should only be made in cases marked by wantonness, willfulness, or evil design; in other words, that the act done, if not within the letter of the exceptions, was within the spirit thereof. Similar statutory provisions to that last named have received like construction in other states. *Batchelder v. Kelly*, 10 N. H. 436; *Cohn v. Neeves*, 40 Wis. 393; *Barnes v. Jones*, 51 Cal. 303; *Russell v. Irby*, 13 Ala. 131; *Lindell* v. *Railroad Co.*, 25 Mo. 550; *Whitecraft v. Vanderver*, 12 Ill. 235. In all of these cases the construction given will be found to be predicated upon a consideration of associated provisions of the statute. In *Batchelder v. Kelly*, which is the earliest case, and which is cited in nearly all of the other cases, the court held that the general tenor of the statute precluded the idea that it was designed to apply the provision in question to unintentional trespasses. In *Cohn v. Neeves* other provisions of the same chapter of the statute are referred to, which the court held gave character to the conversion mentioned in the section under consideration. In *Barnes v. Jones* the title to the act was "Actions for nuisance, waste, and willful trespass, in certain cases, on real property." In *Lindell v. Railroad Co.* the statute was evidently like our own, for the court say that under the circumstances it could not be said that the defendant had any reason to

suppose that literally the land or timber belonged to it, but the spirit of the statute is to punish willful ·trespasses. *Whitecraft v. Vanderver* is based upon the Batchelder case.

Our own case of *Elliott v. Herz* arose under How. Stat. § 2119, which provides that the owner of any dog which shall have killed any sheep shall be liable in double damages, and it was held that the statute did not apply to a case of damage done by a rabid dog. *Shepard v. Gates* was brought under How. Stat. § 1406, which provides that whoever shall injure any bridge or any public road shall be liable in treble damages to the township. The Court held that, if defendant made the cut in the road under the proper statutory authority, the cut was no trespass, and, if the bridge over the cut was remodeled to the satisfaction of the highway commissioner, such an act could not be regarded as a trespass. Both of these cases come within the well-established rule applied to such statutes, that whatever is within the mischief intended to be remedied is considered as within the statute, though not within the letter thereof, and whatever is not within the mischief is not considered within the statute though within the letter.

*Kilgannon v. Jenkinson* was brought under section 7959, which provides that if any person shall be ejected or put out of any lands in a forcible and unlawful manner, or, being put out, be afterwards kept out by force, he shall be entitled to recover treble damages. A dispute arose as to the boundary line. Plaintiff erected a fence, and defendant tore it down. The case was reversed on other grounds, and no point was made or discussed in the briefs as to plaintiff's right to treble damages. What the Court evidently meant by the suggestion was that the act complained of was a mere naked trespass, and not such a forcible ouster as to bring the case within the statute, under the rule adopted in *Shaw v. Hoffman*, 25 Mich. 162.

It must be conceded that in all of these cases language
is used which, considered in the abstract, tends to support
the defendant's contention; but the question here turns
upon the meaning of this particular statute. There is no
question as to the power of the Legislature in the prem-
ises. There is no invasion of any provision of the Consti-
tution. The interpretation of statutes of this class is gov-
erned by the same rules applied to statutes generally.
What may or may not have been assumed or presumed in
other cases, after proper consideration of associated pro-
visions which throw light upon the particular provisions
there questioned, ought to have little weight in a case
like the present, where the language is plain, and is
unaffected by the other provisions of the same act. The
chapter in which the section in question occurs relates to
proceedings to recover the possession of land. It first
treats of forcible entries and detainers, and next of the
recovery of possession where the relation of landlord and
tenant exists or has existed, and then occurs the provis-
ion in question. The language of the section is clear,
explicit, and unequivocal. It is neither doubtful nor
ambiguous. It is susceptible of but one meaning. The
act furnishes no suggestion which throws any doubt upon
the meaning of the language employed, or warrants a
departure from the intention of the Legislature as expressed,
or authorizes a modification of the language used. Courts
cannot speculate beyond the reasonable import of the
words employed. As is said by Westbrook, J., in *People
v. Supervisors of Greene*, 13 Abb. N. C. 424, any
attempted construction of the act which departs from its
language, and purports to be based on the intention of the
legislature, in the absence of any key to the meaning of
words afforded by other parts of the act, is mere specula-
tion, and must vary with the convictions of the reasoner
as to what the law should have been. See, also, *Gardner*

*v. Collins,* 2 Pet. 58; *U. S. v. Wiltberger,* 5 Wheat. 76; *U. S. v. Hartwell,* 6 Wall. 395.

"We are not at liberty," say the court in *Alexander v. Worthington,* 5 Md. 485, "to imagine an intent, and bind the letter of the act to that intent; much less can we indulge in the license of striking out and inserting and remodeling with the view of making the letter express an intent which the statute in its native form does not evidence."

It is only in cases where the language is capable of two meanings, or where, by giving it its literal interpretation, the statute will be inconsistent or ambiguous, that courts resort to the secondary rules of construction to aid in determining the real intention of the legislature. 23 Am. & Eng. Enc. Law, 305; *Bidwell v. Whitaker,* 1 Mich. 469. Courts cannot except special cases which fall within the mischief of such statutes, and are within the scope of the general terms used. The cases of forcible entry or detainer or of holding over in which no claim of right is made are exceptional, and to hold that the language of this section applies only to exceptional cases arising under the act would be to import something into the statute which is at variance with its evident meaning.

In the case of *Hogsett v. Ellis,* 17 Mich. 351, 370, this Court recognized the liability of a tenant holding over after notice to quit, or demand of possession, to treble damages under the statute in question. In *Shaw v. Hoffman,* 25 Mich. 170, the Court intimate that upon a judgment of guilty under section 7959 plaintiff would have been entitled to treble damages as a matter of right. In *Howser v. Melcher,* 40 Mich. 185, and *Hitchcock v. Pratt,* 51 Id. 263, the question before the Court was the proper measure of damages under the general term, "all other damages," used in the section under consideration.

*Robinson v. Kinne,* 1 Thomp. & C. 60, was an action under a statute allowing treble damages for waste. The

court recognize the rule that prevails in actions for trespass to lands under statutes similar to ours, but say respecting plaintiff's right to increased damages under the statute in question:

"We do not see that it was at all material to the case that the defendant claimed to own by another title that portion of the lands on which certain of the trees were cut, and which cutting was found to be waste. The statute in regard to waste does not excuse the defendant from treble damages because he has good reason to believe the land to be his own. The question was whether the *locus in quo* was in point of fact a part of the dower lands, or whether the defendant was estopped from denying that they were such."

The case was afterwards taken to the court of appeals, and the rule laid down in the supreme court was approved. 70 N. Y. 147.

The history of this chapter and of this provision fortifies us in the conclusion reached. Sections 1–5, inclusive, of the territorial act of 1828 entitled "An act to prevent forcible entries and detainers," authorized an arrest, a fine, a judgment of restitution, and the recovery of treble damages in an action of trespass. Section 6 of the same act provides that when any person shall willfully and with force hold over, or when any person wrongfully and without force by disseisin shall obtain and continue in possession of any lands, and after demand for possession shall refuse or neglect to quit possession, the owner may have restitution. Section 8 provides that the complainant shall be entitled to an action of trespass and to treble damages. 2 Terr. Laws, 660. In 1830 an amendment provided that when any person shall hold over after the time for which demised, or contrary to the conditions of the lease, or after any rent shall have become due and shall remain unpaid for 20 days, if demand for possession shall have been made, and the tenant shall neglect or refuse for the

space of 20 days to quit the possession or pay the rent, upon complaint, etc. 3 Terr. Laws, 830. In the Revision of 1838 it was sought by section 6 to embrace the provisions of both section 6 of the law of 1828 and the amendment of 1830, and the words " willfully and with force" were retained. Rev. Stat. 1838, pp. 490, 492. In the Revision of 1846, however, those words were omitted from the section relating to a tenant holding over. Section 5 of the act of 1828, giving to the " complainant of any forcible entry and detainer" the right to bring trespass and to treble damages, was omitted, and section 8 of the same act, which gave to the complainant under section 6 the right to bring trespass, and to treble damages " from the time of notice given to quit," was changed so as to be applicable to cases of forcible entries or detainers as well, and incorporated as one of the general provisions of the chapter. Rev. Stat. 1846, pp. 542, 545.

The only other complaint relates to a question of interest. The jury assessed the plaintiffs' damages at $1,669.62, and in answer to a special question as to what amount they found to be the damages of the plaintiffs for being deprived of the revenues which might have accrued to them if said defendant had not retained possession, they fixed the sum at $156.54. The court entered judgment for single damages only, and struck out the item of interest. In this, we think, the court erred. It appears that the defendant, prior to the notice to quit, had been paying a rental of $780 per year in monthly installments, and that rate was agreed upon as the basis of recovery. There is no good reason why, in determining the damages to which plaintiffs are entitled, the element of interest upon installments of rent from the time they became due and payable under the terms of the agreement, which is taken as the basis of recovery here, should not be considered by the jury. Clearly, any computation which would put

nothing in the place of interest would not give full compensation, and the jury had the undoubted right, under the circumstances, to adopt the legal rate of interest as the measure of damages.

The judgment will be reversed, and a judgment entered here for treble damages, with interest from the date of the verdict below.

LONG, MONTGOMERY, and HOOKER, JJ., concurred. GRANT, J., did not sit.