*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

CHRISTOBAL MAURICIO DELEON,

      Defendant-Appellant.

UNPUBLISHED
February 14, 2019

No. 337134
Wayne Circuit Court
LC No. 16-008567-01-FC

Before: CAMERON, P.J., and RONAYNE KRAUSE and TUKEL, JJ.

RONAYNE KRAUSE, J. *(concurring)*.

I concur with the majority that the carjacking victim's police report was inadmissible and that its admission did not prejudice defendant. I further concur that defendant must be resentenced before a different judge. I write separately because I believe the majority understates the severity of the trial court's misconduct in discussing the race, ethnicity, nationality, sexuality, or religious beliefs of a criminal defendant while passing sentence. To do so is not only unlawful and unethical, but makes a mockery of our justice system and the fundamental rights critical to a civilized people. This Court has a duty to take note of and stand up to such abuses of authority.

## I. THE TRIAL COURT'S COMMENTS AT SENTENCING

At sentencing, the trial court stated:

> You, sir, are a discredit to every immigrant who comes to this country seeking a better life for themselves and their family. You, sir, are fodder for the people who believe that a wall should be built to keep Mexicans out of this country, to keep Hispanics out of this country. It's people like you and your friends who did what they did to this woman is the reason right now we have a president and a whole bunch of people following him believing a wall should be built to keep Latinos out of this country.

MCL 769.34(3)(a) limits a trial court's discretion to depart from the applicable guidelines range and provides that "[t]he court shall not use an individual's . . . race, ethnicity, alienage, national

origin, . . . to depart from the appropriate sentence range." Not only is there applicable law regarding sentencing that prohibits the behavior exhibited by the trial court, but the Michigan Code of Judicial Conduct flatly rejects such behavior as well. The pertinent canons state:

> Canon 2(B): "A judge should respect and observe the law. At all times, the conduct and manner of a judge should promote public confidence in the integrity and impartiality of the judiciary. Without regard to a person's race, gender, or other protected personal characteristic, a judge should treat every person fairly, with courtesy and respect."

> Canon 3(A)(1): "A judge should be faithful to the law and maintain professional competence in it. A judge should be unswayed by partisan interests, public clamor, or fear of criticism."

> Canon 3(A)(9): "A judge should adopt the usual and accepted methods of doing justice; avoid the imposition of humiliating acts or discipline, not authorized by law in sentencing and endeavor to conform to a reasonable standard of punishment and not seek popularity or publicity either by exceptional severity or undue leniency."

> Canon 3(A)(10): "Without regard to a person's race, gender, or other protected personal characteristic, a judge should treat every person fairly, with courtesy and respect. To the extent possible, a judge should require staff, court officials, and others who are subject to the judge's direction and control to provide such fair, courteous, and respectful treatment to persons who have contact with the court."

The trial court's comments about defendant's Hispanic heritage are horrific, as confirmed in part by the prosecutor in their brief, who acknowledges that the trial court's comments were "inflammatory" and "unnecessary." Moreover, these statements are meant to echo deeply disturbing rhetoric that paints Hispanic immigrants as rapists, murderers, and thieves. There can be no doubt that the trial court had exactly such characterizations in mind by stating, "[i]t's people like you and your friends who did what they did to this woman is the reason right now we have a president and a whole bunch of people following him believing a wall should be built to keep Latinos out of this country."

The inclusion of such statements on the record leaves me with no choice but to assume that they were influential in the trial court's decision. As a court of record, we are restricted to the most obvious implication of any statements on the record; we are in a poor position to impart intent, tone, purpose, and the like, to the mere written word. "Courts cannot speculate beyond the reasonable import of the words employed." *Lane v Ruhl*, 103 Mich 38, 42; 61 NW 347 (1894). Given that the trial court made inappropriate comments regarding defendant's race in its

explanation of the sentence it was about to hand down, I assume that the court intended those statements as part of the rationale for its actions.[1]

The utterance of political speech from the bench creates uncertainty, questions of partiality, and leaves serious doubt about the wisdom of judicial decisions. A fair trial requires both the actual absence of bias and "the appearance of justice." *Glass v State Highway Comm'r*, 370 Mich 482, 487; 122 NW2d 651 (1963) (quotation omitted). The "appearance of justice" requires trial judges to refrain from "giv[ing] vent to personal spleen." *Offutt v United States*, 348 US 11, 14; 75 S Ct 11; 99 L Ed 11 (1954). Thus, "appearance of justice" is not some mere turn of phrase. Rather, it is the summation of one of the founding principles of our judiciary: that our justice system relies on the trust of the people and their representatives as the source of its power. Alexander Hamilton noted as much: "[t]he judiciary, on the contrary, has no influence over the sword or the purse; no direction either of the strength or the wealth of the society; and can take no active resolution whatever . . . and must ultimately depend on the aid of the executive arm even for the efficacy of its judgments." The Federalist No. 78 (Hamilton) (Rossiter ed, 1961), p 464.

In order to maintain that trust, a judge must be seen to stay focused on truth, integrity, and justice; even if doing so may at times run against the currents of popular opinion, tranquility, or political expediency. Our system of governance demands that judges be of a defined moral character and demands adherence to a strict code of ethics. The judge holds a revered and crucial place in our political system as the arbiter of truth and justice, and actions that tarnish or cast doubt upon that position damage not only the judiciary, but the law itself, and ultimately our entire society.

I recognize that defendant committed horrifying and outrageous criminal conduct. Nevertheless, if the judiciary does not maintain a modicum of respect for *all* persons brought before it, the courts risk losing the respect of the people for the law. It is indispensable to both justice and civilization that judges show themselves to be above yielding to denigrating personal invective. The issues discussed here go beyond a single defendant in one criminal case. They go to the core of our ethics and beliefs as a State and as a Nation. Every person under the jurisdiction of the State of Michigan and the United States of America must be seen as equal in the eyes of the court; our society cannot survive were it to be otherwise.

/s/ Amy Ronayne Krause

---

[1] Additionally, this is not the first time the trial court has been chastised for committing improprieties at criminal sentencing. See *People v Pennington*, 323 Mich App 452; 917 NW2d 720 (2018); *People v Walker*, unpublished per curiam opinion of the Court of Appeals, Docket No. 327063 (Decided December 1, 2016).