Cohn vs. Neeves and another.

*Conversion of logs, etc. Construction of penal statute.*

1. Penal statutes must be strictly construed; and in the construction of statutes generally, courts will not always follow the strict letter, but will give effect to the intent.
2. Sec. 5, ch. 42, Tay. Stats., which provides for the recovery of *treble damages*, for the conversion of logs or lumber in certain cases, is *penal* in its character, and (especially in view of the other provisions of that chapter) must be held to apply, not to every case of a technical conversion, but only to cases in which some element of willfulness, wantonness or evil design enters into the act.

APPEAL from the Circuit Court for *Winnebago* County. The case is thus stated by Mr. Justice Cole in his opinion as originally prepared:

"Sec. 5, ch. 42, Tay. Stats., reads as follows: 'Whoever shall convert to his own use, without the consent of the owner

thereof, any logs, timber, boards or planks floating in any of the waters of this state, or lying on the banks or shores of such waters, or on any island where the same may have drifted, except as in this chapter provided for, shall be liable to the owner thereof in treble the amount of damages.' This action is for treble damages under this statute; and a recovery was had according to the claim of the plaintiff, under the instructions of the court below. The exceptions relied on for a reversal of the jddgment were taken to certain portions of the charge of the court, and to the refusal of the court to give several requests asked on the part of defendants. The facts upon which the questions of law arise are these: The plaintiff's logs, while floating down the Wisconsin river, became intermixed with a large quantity of logs belonging to the defendants, in a boom or reservoir of the latter kept or maintained on the river for the purposes of their mill. It is not claimed, nor does there appear to be any ground for claiming, that there was any negligence or evil design on the part of the defendants in permitting the logs to become thus intermixed in their boom; but such intermixture, under the circumstances, seems to have been unavoidable. The marks of the plaintiff and defendants, except upon close examination, were scarcely distinguishable when the logs were floating in the river; the plaintiff's mark was not even recorded when the intermixture took place. There were interviews between the parties relative to the logs, after it was discovered they were in defendant's boom, in which the plaintiff demanded that the defendants should turn the logs out at once, which the defendants refused to do, because it would be expensive and troublesome to get them out. The defendants, however, were willing to turn the logs out one by one, as they came to them at their mill race while sawing their own logs; but this the plaintiff refused to have done. Some negotiations took place between the parties about the defendants sawing the logs for the plaintiff at the usual rates, and about their buying the

logs or exchanging others for them; but upon the verdict it must be assumed that the jury found that no understanding or agreement was come to upon these points. It is not denied that the defendants sawed and manufactured the logs into lumber; nor is it denied that they were the property of the plaintiff. The learned circuit judge expressly charged, that if the logs were sawed into lumber with the plaintiff's consent, there could be no recovery even for single damages; but if sawed without his consent, the plaintiff could recover the treble damages given by the statute."

The defendants appealed from the judgment.

The cause was submitted to this court on the briefs of *Gabe Bouck* and *L. P. Powers* for the appellants, and *Webb & Cochrane* and *Geo. D. Waring* for the respondent.

For the appellants it was argued, that penal statutes must receive a strict construction. Potter's Dwar., 245; *Strong v. Stebbins,* 5 Cow., 211; *Palmer v. Conley,* 4 Denio, 375. The statutory provision relied on does not include every conversion within the literal meaning of the words, but only such conversions as are marked by wantonness or evil design. *Wallace v. Finch,* 24 Mich., 255; *Russell v. Irby,* 13 Ala., 131; *State v. Luther,* 8 R. I., 151; *State v. Cockfield,* 15 Rich., 53; *Yahoola etc. Mining Co. v. Irby,* 40 Ga., 479; *Lindell v. R. R. Co.,* 25 Mo., 550; *Emerson v. Beavaus,* 12 id., 511; *Palmer v. The State,* 45 Ind., 388. 2. Statutes must be construed according to the intention of their makers, if that can be ascertained with reasonable certainty, although such construction may seem contrary to the ordinary meaning of the letter of the statute. *Haentze v. Howe,* 28 Wis., 293; *Jersey Co. v. Davidson,* 29 N. J. Law (5 Dutch.), 415; *Brown v. Wright,* 13 id. (1 Green), 240; *Catlin v. Hull,* 21 Vt., 152; *Ryegate v. Wardsboro,* 30 id., 746; *U. S. v. Athens Armory,* 2 Abb. (U. S.), 129; *Staniels v. Raymond,* 4 Cush., 314; 77 Mass., 523; *Erwin v. Moore,* 15 Ga., 361; *Bathurst v. Course,* 3 La. An., 260; *Commercial Bank v. Foster,* 5 id.,

516; *Canal Co. v. Railroad Co.*, 4 Gill & J., 1; *Beall v. Harwood*, 2 Harris & J., 167; *Ingraham v. Speed*, 30 Miss., 410; *New Orleans etc. R. R. Co. v. Hemphill*, 35 id., 17; *State v. Turnpike Co.*, 2 Sneed (Tenn.), 88; *Riddick v. Governor*, 1 Mo., 147; *Riddick v. Walsh*, 15 id., 519; *Minor v. Bank*, 1 Pet., 64; *Wilkinson v. Leland*, 2 id., 662; *People v. Ins. Co.*, 15 Johns., 358; *Jackson v. Collins*, 3 Cow., 89; *Ezekiel v. Dixon*, 3 Ga., 146; *Brewer v. Blaugher*, 14 Pet., 178; *U. S. v. Winn*, 3 Sumner, 209. If a literal construction will make the statute absurd, it must be so construed as to avoid the absurdity. *State v. Clark*, 29 N. J. Law, 96; *Henry v. Tilson*, 17 Vt., 479; *People v. Admire*, 39 Ill., 251; *U. S. v. The Hunter*, Pet. C. C., 10. General terms should be so limited in their application as not to lead to injustice, oppression, or an absurd consequence. *U. S. v. Kirby*, 7 Wall., 482. Moreover, if a literal construction be put upon this act, it is not only absurd, but void. The legislative power cannot impose penalties except for wrongful acts done willfully or maliciously, with wantonness or criminal negligence.

For the respondent it was argued, that the intention of the the legislature is to be gathered from the words of the statute, if plain and unambiguous. Sedgw. Con. and Stat. Law, 230, 231, and cases cited; id., 243, 260; *Newell v. The People*, 3 Seld., 97; *McCluskey v. Cromwell*, 1 Kern., 601, 602; *Bidwell v. Whitaker*, 1 Mich., 469–79; *Waller v. Harris*, 20 Wend., 561. The question under the statute is not merely whether there was a technical conversion of the logs, but whether defendants took logs of the plaintiff, which the latter had set afloat upon the river, and appropriated them without his consent. If they did, for this *trespass* the statute makes them liable for treble damages. It is the person who commits the trespass who is made liable by the statute, and not a party to whom he may sell the logs, although the latter may be guilty of a technical conversion. It is conceded that the sawing by defendants must have been *willful* in a legal sense;

*i. e.*, it must have been done by design and not by mistake. There must have been a purpose to take the logs and use them. But the belief of defendants as to their right to do what they did, was not a legitimate subject of inquiry. In a question of usury, the lender's belief that he had a right to take the rate of interest actually taken, is immaterial. So if one is sued for obstructing the highway, his belief that there was no highway where he placed the obstruction will not relieve him from the penalty of the statute. (R. S., ch. 19, sec. 101.) See a good illustration of the principle in *Sickles v. Sharp*, 13 Johns., 497. 2. Defendants had no right to obstruct the river with their boom. Angell on W. C., § 537; *Morgan v. King*, 35 N. Y., 454–9; *Brown v. Chadbourne*, 31 Me., 9; *Moore v. Sanborne*, 2 Mich., 519; *Whisler v. Wilkinson*, 22 Wis., 576; *Enos v. Hamilton*, 24 id., 658; *Wis. River Imp. Co. v. Lyons*, 30 id., 61; R. S., ch. 41, sec. 2. 3. The statute is not strictly penal, but remedial. Smith's Stat. and Con. Law, §§ 724, 731, 733–4; *Taylor v. U. S.*, 3 How., 197–220; *Reed v. Northfield*, 13 Pick., 94; *Pike v. Jenkins*, 12 N. H., 256; *People v. Bartow*, 6 Cow., 293; *Palmer v. Bank*, 18 Me., 166; *Frohock v. Pattee*, 38 id., 105; *Quimby v. Carter*, 20 id., 218; *Philbrook v. Handly*, 27 id., 53; Sedgw. Con. and Stat. Law, 390, 391.

COLE, J. The important question arising upon the various exceptions taken by defendants is: Does the statute give the treble damages when the conversion is merely a technical conversion in law, as in the case before us; or was it only intended to apply to cases where some ingredient of willfulness, wantonness or evil design enters into the act? According to the view of the circuit judge, the statute applies to every case of the conversion of logs, timber or lumber floating in any of the waters of this state, or lying on the banks or shores of such waters, or on any island where the same may have drifted; and gives treble damages as the measure of recovery.

It seems to us that this is an unreasonable and unsound construction of the provision. True, the language used is general, and, if literally interpreted, would include any conversion. But, says an acknowledged authority on this subject, in interpreting a statute it is not always a safe rule, or a true line of construction, to decide according to the strict letter of the act, but courts will rather consider what is its fair meaning, and will expound it differently from the letter, in order to preserve the intent. *Qui hæret in litera, hæret in cortice.* Broom's Legal Maxims, p. 536. Observing this rule of interpretation, looking at the object and purpose of the statute, we cannot think it was intended to apply to every conversion of this kind of property, situated or found as described, without regard to the question whether the conversion was wanton and willful or not. It is needless to observe that the law is highly penal in its character. By way of punishment, it subjects the wrongdoer in certain cases to an extraordinary liability for the property of another appropriated to his use. In some cases the conversion may be merely a technical one in law, arising from accident, mistake, or even carelessness, without any evil design, and where the damages recoverable at common law afford an adequate compensation to the party injured. We can hardly think such a case was within the contemplation of the legislature. And this view derives support from the other sections of the act. By the first section, an owner or occupant of land upon which logs or lumber may have drifted, may, after a given period, acquire the title to the property by giving notice, etc. The subsequent section imposes as a penalty treble damages for altering or destroying marks upon logs or lumber — an act which implies an evil or malicious purpose, — and makes the possession of such logs or lumber presumptive evidence of guilt. These provisions serve to give character to the conversion referred to in the fifth section, and strongly sustain the conclusion that this section was intended only to apply to a conversion where there was

some element of willfulness, wantonness or evil design in the act.

Furthermore, this construction of the statute derives support from the decision of the supreme court of Michigan in the well considered case of *Wallace v. Finch*, 24 Mich., 256, under a strictly analogous statute. That was an action of trespass for cutting timber, under a statute giving treble damages. There had been negotiations by letter for a sale and purchase of the land from which the timber was taken. The plaintiff made an offer to sell the land, which the defendant accepted by letter. There was some delay in the mail, and before the letter accepting the offer reached the plaintiff, the latter sold the land to another party. All the acts of trespass were committed between the time when the letter accepting the offer was mailed to the plaintiff, and the reception by the defendant of the plantiff's letter explaining the delay and announcing the sale of the property to another. And the court, in considering the question whether the statute was intended to apply to the case, makes remarks quite pertinent to the case at bar. The court says: "It is not pretended that this correspondence, or any contract made by it, embraced any license to Wallace, or conferred any right upon him to enter upon the land or to take anything from it; and certainly no view can be taken of it which could avail to save Wallace from the legal liability attached to a trespass having no element of willfulness, wantonness or evil design in it. And it is not perceived that it could avail him as any defense against a claim for single damages under the statute in question. The question of treble damages, however, stands on a different principle altogether. When this law gives single damages, it has a single object, and that is to redress the injured party. But when the damages are to be trebled, the object is twofold, namely: to redress the injury done, and also to punish the wrongdoer. No other explanation of these provisions is possible; and according to well settled rules, when a law is sus-

ceptible of penal applications in special cases, such applications of it ought to be closely confined to cases within its principle. Now, when we come to interpret this statute, we must either hold that the legislature meant that any person, however blameless in a moral point of view, who should be within the inculpatory words of the first section and not within the exact words of the saving provisions of the second section, should be punished; or, on the contrary, that the legislature meant that the penal application should be made only in cases marked by wantonness, willfulness or evil design. And it is hardly admissible to impute the former purpose to the legislature." True, in that case the court lays much stress upon the limitations contained in the second section of the act, in confirmation of the view that the penal provision was only intended to apply to a trespass aggravated by bad faith or other positive blame. But the sections of our statute to which reference has been made, afford quite as strong ground for the assumption that the fifth section was only intended to include a conversion "marked by wantonness, willfulness or evil design." There were certainly no circumstances attending the conversion of the logs in the present case, which would bring it within that rule of construction.

The court refused to charge, as requested, that if the logs got into the boom or reservoir of the defendants, became mixed with their logs unavoidably or through mistake, and were sawed and converted, the plaintiff was not entitled to recover treble damages. According to our view of the statute, the instruction was proper, and should have been given. There are also other instructions which were refused, and which seem to be applicable to the facts as disclosed in the evidence, more especially the fifth, in which the court was asked to charge, in effect, that if the jury found that the defendants sawed the logs in good faith, supposing they had the right so to do, then the plaintiff could not recover treble damages. The learned circuit judge made the case turn entirely

upon the question whether the plaintiff consented to the sawing of the logs; ruling that if he did not, a case was made that fell within the spirit and intent of the statute. But that fact alone was not sufficient to show or make out a case of conversion contemplated by the law, for which treble damages are allowed. Other important facts must exist. The evidence must satisfy the jury that the conversion was not only against the consent of the plaintiff, but was attended by circumstances of bad faith and intentional wrong, in order to bring it within the penal provision. For, unless the conversion was willful or wanton, the plaintiff was entitled to recover only single damages. See *Batchelder v. Kelley*, 10 N. H., 436; *Russell v. Irby*, 13 Ala., 131; *State v. Luther*, 8 R. I., 151; *Lindell v. Hannibal & St. Joseph R'y*, 25 Mo., 550; *Palmer v. The State*, 45 Ind., 388.

The court below seemed to be of the opinion that unless the facts presented a case for the recovery of treble damages, the action could not be maintained. We fail to perceive that it would be a violation of any principle of justice or equity to allow him to recover single damages, providing he made out a case entitling him to such recovery. Failing to show an intentional or wanton conversion of his property, such as would entitle him to the increased damages, but showing a conversion in law, why may he not recover the damages sustained, as in an ordinary action of trover? We surely can see no objection to his doing so.

*By the Court.* — The judgment of the circuit court is reversed, and a new trial ordered.