Krom and others, Appellants, vs. Antigo Gas Company and another, Respondents.

*January 11—February 18, 1913.*
*September 20—October 7, 1913.*

*Public utilities: Water companies: Inadequate supply of water: Lia-*
*bility for loss by fire: Stare decisis: Statutes construed: "Rea-*
*sonably adequate service:" "Injured:" Pleading: Demurrer:*
*Joinder of causes of action.*

1. The doctrine that a public water company is not liable to one
whose property has been destroyed by reason of the negligent
failure of the company to furnish a sufficient supply of water
for fire protection (laid down in *Britton v. Green Bay & Ft. H.*
*W. W. Co.* 81 Wis. 48), has become a rule of property which
should be disturbed only by legislative act.

2. That rule was not changed by sec. 1797m—3 nor by sec. 1797m—
93, Stats.

3. The provision in sec. 1797m—3, Stats., that "every public utility
is required to furnish reasonably adequate service and facili-
ties" is merely declaratory of the common law and adds noth-
ing to the obligations of persons or corporations carrying on
the business of a public utility.

*4. Sec. 1797m—93, Stats., providing that if any public utility "shall
omit to do any act, matter or thing required to be done by it,
such public utility shall be liable to the person . . . *injured*
thereby" in treble damages, creates no new liability except the
liability for treble damages instead of single damages. The
word "injured," as there used, implies an *actionable* wrong.

5. A complaint against two, based upon their separate negligent
acts causing damage to plaintiff, is not demurrable for im-
proper joinder of causes of action where it fails to state a
cause of action against one of the defendants.

Appeal from orders of the circuit court for Langlade
county: John Goodland, Circuit Judge. *One order re-*
*versed; the other affirmed.*

This is an appeal by the plaintiffs from orders sustaining
the separate demurrers of the two defendants to the com-
plaint. The essential facts stated in the complaint are these:
On and prior to December 14, 1910, the plaintiffs *Krom* and

*Wolpert* conducted a large general store in Antigo, and the other plaintiffs were insurance companies carrying insurance on the goods in said store in various amounts aggregating $40,500. The defendant gas company was a corporation manufacturing and selling illuminating and heating gas in said city, and the defendant water company was a corporation furnishing water to said city for fire protection and to private consumers for domestic use. The gas company at the date named was furnishing the plaintiffs Krom & Co. with gas through a supply pipe which became frozen, and the gas company sent a careless and negligent employee to care for the frozen pipe, who entered the basement of the store carelessly and negligently carrying a lighted torch. The gas escaped from the feed pipe by reason of the negligence of the gas company in failing to provide a stop-cock or to shut off the supply of gas elsewhere, and filled the basement of the store. Such liberated gas ignited from the unprotected torch of the gas company's servant, and exploded, setting fire to the store, which with its contents was burned, to the damage of Krom & Co. in the sum of $58,681.73.

After alleging these facts the complaint proceeds as follows:

"Thirty-eighth. That it was the duty of said defendant *Antigo Gas Company* to have had a proper cut-off, stop-cock, or other device or appliance in said feed pipe at the street line or before the same entered said building, so as to shut off the gas running through said feed pipe in the event of any obstruction therein or in said gas main, but that, notwithstanding said defendant's duty in the premises, it wholly failed and neglected to have said cut-off, stop-cock, or any other device or appliance for such purpose therein, and it became impossible to prevent the flow of gas into said basement under the circumstances, to stop or cut off said gas immediately, as might have been done had the safeguards above referred to, or any of them, been used.

"Thirty-ninth. That the defendant *Antigo Gas Company* carelessly failed and neglected to shut off the gas flowing

through said main to and into said feed pipe at the power house of said defendant, or elsewhere, as it might have and should have done at once, until nearly three hours had elapsed from the commencement of said fire, though said gas company was immediately and seasonably notified of the presence of said fire.

"Fortieth. That it was by law the duty of the defendant *Antigo Water Company* to furnish reasonably adequate service and facilities and to that end to provide a constant and sufficient supply of water in said water mains, as well as a constant and sufficient pressure to force said water through the hose attached thereto, in the event of fire, so as to reasonably protect said building. That notwithstanding said defendant's duty in the premises, on said 14th day of December, A. D. 1910, the supply of water in the said mains and the pressure therein was wholly inadequate and insufficient, as it had been for a long time prior thereto, as was well known to said defendant *Antigo Water Company,* but unknown to any of the said plaintiffs, with the result that there was not then furnished reasonably adequate facilities and service to extinguish the fire so set as aforesaid, and all such failure and neglect concurring with said negligence of said gas company destroyed said property, to the damage of plaintiffs as hereinbefore set forth.

"Forty-first. That the loss and damage to plaintiffs as hereinbefore set forth was proximately caused—

"1st. By the carelessness and negligence of the said defendant *Antigo Gas Company* in using in said building an unprotected light, while repairing said pipe.

"2d. By the carelessness, negligence, neglect and failure of said defendant *Antigo Gas Company* to provide proper shut-off, stop-cock, or other suitable device or appliance in or on said gas feed pipe at the street line, or outside the point of entry into said building.

"3d. By the carelessness, negligence and failure of said defendant *Antigo Gas Company* in not shutting off the gas running through said gas main and feed pipes at the power house, or elsewhere, as they might have done, preventing the escape of gas therein.

"4th. By the carelessness, negligence, failure and omission of the defendant *Antigo Water Company* to furnish reasonably adequate service and facilities for fire protection be-

Krom v. Antigo Gas Co. 154 Wis. 528.

cause of such inadequate supply and pressure of water in its water mains as well as in its failure to provide and maintain suitable and sufficient boilers in its power house on the 14th day of December, A. D. 1910, and for a long time prior thereto."

It is further alleged that the plaintiffs who are insurance companies have paid to the plaintiffs Krom & Co. the amounts of the insurance by them severally carried upon the destroyed property, and are subrogated thereby to the rights of Krom & Co. to the amounts so paid. Judgment is demanded against the defendants for treble damages.

For the appellants there was a brief by *Gill & Barry, T. W. Hogan,* and *S. J. McMahon,* and oral argument by *Mr. T. H. Gill* and *Mr. McMahon.* They cited, among other cases, *Woodbury v. Tampa W. W. Co.* 57 Fla. 243, 249, 49 South. 556; *Gorrell v. Greensboro W. S. Co.* 124 N. C. 328, 32 S. E. 720; *Jones v. Durham W. Co.* 135 N. C. 553, 47 S. E. 615; *Lexington H. & M. Co. v. Oots,* 119 Ky. 598, 84 S. W. 774; *Graves Co. W. Co. v. Ligon,* 112 Ky. 775, 66 S. W. 725; *Mugge v. Tampa W. W. Co.* 52 Fla. 371, 42 South. 81; *Coy v. Indianapolis G. Co.* 146 Ind. 655, 46 N. E. 17; *Guardian T. & D. Co. v. Fischer,* 200 U. S. 57, 26 Sup. Ct. 186, 50 L. Ed. 367, 368. They also cited secs. 1797m—3 and 1797m—93, Stats., and contended that fire pressure is one of the requirements of "reasonably adequate service" under these statutes. *Hill v. Antigo W. Co.* 2 Wis. R. R. Comm. Rep. 627, 631; *Stevens Point v. Stevens Point W. Co.* 6 Wis. R. R. Comm. Rep. 458; *Mellen v. Mellen W. Co.* 5 Wis. R. R. Comm. Rep. 202, 205.

For the respondent *Antigo Water Company* there was a brief by *Jeffris, Mouat, Oestreich & Avery,* attorneys, and *Edward M. Smart,* of counsel, and oral argument by *Mr. M. G. Jeffris* and *Mr. Smart.*

For the respondent *Antigo Gas Company* there was a brief by *Goodrick & Goodrick,* and oral argument by *A. B. Goodrick.*

The following opinion was filed February 18, 1913:

WINSLOW, C. J.    It is very certain that the complaint states a good common-law cause of action for negligence against the gas company, and the only question which we find it necessary to consider upon this appeal is the question whether a cause of action is stated against the water company.

In the case of *Britton v. Green Bay & Ft. H. W. W. Co.* 81 Wis. 48, 51 N. W. 84, this court held, after full argument and mature consideration, that at common law there was no liability on the part of a water company in such a case. It was recognized in that case that the question was one upon which there was not entire unanimity of opinion in the courts, but it was deemed that the doctrine of nonliability to the individual property owner in such a case was supported by the greater weight of authority and was the more reasonable and logical.    We recognize the fact that since that decision two state courts have met this question and have come to the opposite conclusion: *Gorrell v. Greensboro W. S. Co.* 124 N. C. 328, 32 S. E. 720; *Mugge v. Tampa W. W. Co.* 52 Fla. 371, 42 South. 81.    See generally on this question, note to *State v. Gosnell* (116 Wis. 606, 93 N. W. 542) 61 L. R. A. 33, on pages 96, 97, and 98; also *German Alliance Ins. Co. v. Home W. S. Co.* 226 U. S. 220, 33 Sup. Ct. 32. Whatever might be our conclusion on the question were it presented now for the first time in this court, we do not think that we would be justified in changing the rule of liability laid down in the *Britton Case.*    That rule was announced more than twenty years ago.    Many water companies in this state have organized and erected plants at large cost and gone into business since that time.    They were entitled to regard that very important question as settled by the decision in the *Britton Case,* and doubtless did so regard it.    Their investments may truly be said to have been made in reliance upon

that decision. In every practical sense it has become a rule of property which if disturbed at all should be disturbed only by legislative action.

The appellants claim in this case that it has been so changed, and this claim presents the most serious question which we meet in the case. Two sections of the Public Utilities Law are relied on as accomplishing this result, namely, sec. 1797m—3 and sec. 1797m—93, Stats.

The first named of these sections provides that "Every public utility is required to furnish reasonably adequate service and facilities," and the second provides that "If any public utility shall do or cause to be done or permit to be done any matter, act, or thing in sections 1797m—1 to 1797m—109, inclusive, prohibited or declared to be unlawful, or shall omit to do any act, matter or thing required to be done by it, such public utility shall be liable to the person, firm or corporation injured thereby in treble the amount of damages sustained in consequence of such violation; provided, that any recovery as in this section provided, shall in no manner affect a recovery by the state of the penalty prescribed for such violation."

The first section named is plainly declaratory of the common law and adds nothing to the obligations of persons or corporations who, having received legislative authority to carry on the business of a public utility, undertake to do so.

Such persons and corporations have always been under a legal duty to furnish reasonably adequate service at reasonable rates and without discrimination to all who are entitled to apply for service. *Shepard v. Milwaukee G. L. Co.* 6 Wis. 539; *Munn v. Illinois,* 94 U. S. 113; *Kennebec W. Dist. v. Waterville,* 97 Me. 185, 54 Atl. 6, 60 L. R. A. 856; *Madison v. Madison G. & E. Co.* 129 Wis. 249 (108 N. W. 65), and cases cited in that case on page 265.

The effect of the second section cited presents, however, a more difficult question. The legislature, having by the first

named section incorporated in the law a specific requirement that reasonably adequate service shall be furnished, now provides, by the second named section, that if any public utility ". . . shall *omit* to do any act, matter or thing required to be done by it, such public utility shall be liable to the person, firm or corporation *injured* thereby" in treble damages, in addition to any penalty owing to the state.

The question whether the legislature intended by these words to substantially add to or enlarge the limits of liability laid down in the *Britton Case* must, we think, be answered in the affirmative. That case in substance held that there could be no recovery by the individual whose property had been destroyed on account of the negligent failure of a water company to furnish a sufficient supply of water, because there was no contract relation between the individual and the utility, and hence no duty owing and no breach of duty. The section under consideration makes no mention of contract rights, and with apparent industry bases a liability on two facts only: (1) omission to perform a duty imposed by the act (no distinction being in terms made as to the party to whom the duty is primarily owing), and (2) injury thereby to some person, firm, or corporation. The use of the word "injured" in this connection has some degree of significance. Had the word "damaged" been used, the argument that there was no intention to extend the former rule would be stronger, for damage technically means loss resulting from an actionable wrong, whereas injury carries no necessary implication of such a wrong. The use of the word "injured," therefore, seems to indicate an intentional departure from the idea of legal damage as an essential to a recovery and the substitution therefor of actual injury resulting from any neglect of duty by the utility, whether the duty neglected was one owing to the plaintiff or to the municipality at large.

Our conclusion upon this preliminary question brings us to the last question which we find it necessary to consider in

Krom v. Antigo Gas Co. 154 Wis. 528.

the case, namely, the question whether by the last named section all acts and omissions in violation of the utilities law, however trivial and unintentional, are to be punished by the imposition of treble damages, in addition to a criminal penalty, or whether only wilful acts and omissions are so to be punished. The law nowhere contains the word "wilful," and it is strongly urged that if we construe it to cover only wilful acts, and acts which by reason of their wanton or reckless character are legally equivalent to wilful acts, we shall be construing words which are so plain as to prohibit construction, and thus in effect encroach on legislative powers. This argument would possess much strength were it not for the fact that this court, in a series of decisions commencing many years ago, has construed similar statutes highly drastic and penal in their nature as not covering acts or omissions resulting from mere inadvertence or excusable neglect. Thus in *Cohn v. Neeves,* 40 Wis. 393, a statute providing for the recovery of treble damages against any person who should convert to his own use without consent of the owner any logs, timber, etc., floating in any of the waters of the state or lying on the banks, was held, in view of its highly penal character, as only intended to apply "to a conversion where there was some element of wilfulness, wantonness, or evil design in the act." It was also said in that case that the law "by way of punishment subjects the wrongdoer in certain cases to an extraordinary liability for the property of another appropriated to his use. In some cases the conversion may be merely a technical one in law, arising from accident, mistake, or even carelessness, without any evil design, and where the damages recoverable at common law afford an adequate compensation to the party injured. We can hardly think such a case was within the contemplation of the legislature." In that case reliance was placed on the case of *Wallace v. Finch,* 24 Mich. 255, where a similar statute had been similarly construed.

Again in *Schumacher v. Falter,* 113 Wis. 563, 89 N. W.

485, and *Johnson v. Huber*, 117 Wis. 58, 93 N. W. 826, stat-
utes providing penalties for refusal to discharge mortgages
and judgments were respectively held to apply only to wilful
refusals, although neither the word "wilful" nor any equiva-
lent word was used in the act itself.   So also in the case of
*State v. Railway Cos.* 128 Wis. 449, 108 N. W. 594, a sec-
tion of the law which provided that any railroad company
which should neglect to pay its license fee "or any part
thereof" should absolutely forfeit to the state the sum of
$10,000, and also stand liable to forfeit all of its rights under
the laws, was held not to cover an excusable or honest mistake
in making returns either of law or fact or both, but only to an
inexcusable failure.

The statute before us is highly penal in its nature.   We
think the legislature could hardly fail to realize its almost
criminal character.   The Public Utilities Law was not the
product of a single brain, nor was it struck off at a moment's
notice, but bears marks of careful thought, examination, and
deliberation by many minds.   It can hardly be supposed that
its framers did not know of the principle acted upon by this
court for nearly or quite thirty years in the construction of
such highly penal laws, and it must be presumed, we think,
that they enacted the present section with that established
principle of construction in mind, and hence considered it
unnecessary to further signify their purpose to provide
thereby a punishment for acts and omissions in which there
was some element of wilfulness, wantonness, or reckless dis-
regard of duty.   For such acts or omissions its provisions
are eminently suitable; for errors of honest judgment or un-
intentional and excusable neglects they are not only not suit-
able but unnecessary in the many cases where there is a com-
mon-law liability to patrons for negligent failure to render
adequate service, causing legal damage to the patron.

The legislature must have known also that some cities of
the state already owned their own water plants, and that the
number of such cities was on the increase, and they could

hardly fail to have in mind the fact that any single confla-
gration in even the smallest of our cities might easily cause
a loss which when multiplied by three would impose a stag-
gering debt upon the municipality, from the burden of which
it could not escape for many years.   If the plaintiffs' conten-
tion is sustained, it must be on the theory that it was intended
to place that crushing burden not only on the water companies
of the state, but also on the municipal corporations which own
and operate their own waterworks, in every case where by the
carelessness or inadvertence of an employee the water pres-
sure falls short for a brief time at the incipient stages of a
destructive fire, or some other temporary default occurs on
the part of a subordinate employee from which a jury might
find a failure to furnish reasonably adequate service in the
early moments of the fire.

Viewing the statute in the light of the decisions, we do not
feel that we can do otherwise than construe it as a statute
covering only wilful breaches of duty, or, as expressed in the
*Cohn Case* (40 Wis. 393), a breach in which there is "some
element of wilfulness, wantonness, or evil design."

As we view the complaint there is no such breach charged
against the water company here, and hence no cause of action
is stated against the water company, and there is no improper
joinder of causes of action.

*By the Court.*—The order sustaining the demurrer of the
defendant gas company is reversed with costs, and the order
sustaining the demurrer of the defendant water company is
affirmed with costs, and the action is remanded for further
proceedings according to law.

TIMLIN, J. (*concurring*).   The pivotal question in this
case is whether the rule of nonliability established by *Hayes
v. Oshkosh,* 33 Wis. 314, and *Britton v. Green Bay & Ft. H.
W. W. Co.* 81 Wis. 48, 51 N. W. 84, and approved many
times since has been abrogated or modified as regards water
companies by the enactment of sec. 1797m—3, Stats., which

requires every public utility to furnish reasonably adequate service and facilities, sec. 1797m—1, which includes such water companies under the name "public utility" and declares that the term "service" found in the statute is used in its broadest and most inclusive sense, and sec. 1797m—93, which provides that: "If any public utility shall do or cause to be done or permit to be done any matter, act or thing in this act prohibited or declared to be unlawful, or shall omit to do any act, matter or thing required to be done by it, such public utility shall be liable to the person, firm or corporation injured thereby in treble the amount of damages sustained in consequence of such violation."

The complaint seeks to hold the water company and others for damages by fire to the owner of property, and certain insurance companies having policies thereon, on the ground that the water company negligently failed to furnish reasonably adequate service and facilities for fire protection. I think without the aid of the statute above mentioned the complaint states no cause of action against the *Antigo Water Company* under the law as settled in this state by the decisions referred to and in harmony with at least the numerical weight of judicial authority elsewhere. *German Alliance Ins. Co. v. Home W. S. Co.* 226 U. S. 220, 33 Sup. Ct. 32; *Hone v. Presque Isle W. Co.* 104 Me. 217, 71 Atl. 769, 21 L. R. A. N. s. 1021; *Ancrum v. Camden W., L. & I. Co.* 82 S. C. 284, 64 S. E. 151, 21 L. R. A. N. s. 1029; *Woodbury v. Tampa W. W. Co.* 57 Fla. 243, 49 South. 556, 21 L. R. A. N. s. 1034.

The cases absolving water companies from liability for damages caused by accidental fire, where the water company failed to supply sufficient water, went somewhat upon the enormity of the damages which might thus be imposed upon water companies. It is quite remarkable that, after acquiescing nearly twenty years in the rule of the *Britton Case, supra,* during a period of great legislative activity in which

Krom v. Antigo Gas Co. 154 Wis. 528.

the legislature of this state has not hesitated at making express and sweeping changes, there should be a statute enacted by the legislature intended not only to change the existing rule by implication but to impose treble damages upon the. water company. The change from a legal condition in which it was held that the enormous damages which might result from a great conflagration were not within contemplation of the parties seeking or granting a franchise for the supply of water in a city to a condition in which the water company should be held for three times such damage, is not apt to steal upon us unnoticed or to be established by mere implication. Aside from this, in a statute authorizing the fixing and regulation of reasonable rates for water service by such companies there is some incongruity in imposing a burden upon the water company which would necessitate either the carrying of enormous insurance by the water company or the carrying of an enormous additional risk which must often drive the water company into bankruptcy or require a large advance in its water rates to meet this added expense or this added risk. The losses caused by accidental fires or negligent fires are usually covered by insurance procured by the owners of the property destroyed, and the insurance is computed and adjusted so that the shock of loss is dissipated and distributed among and upon all who pay premiums to the insurance company or insurance companies interested. The construction of the statutes quoted and referred to, contended for by appellants, would make the water company liable to the owner and the insurance companies for such loss in all cases in which the water company might be found negligently remiss in its duties and thus the statute would make a radical change in existing economic conditions. Again, it is unusual and extraordinary, if not unprecedented, to impose treble damages for mere negligence where there is no malice or contumacy and the amount of damage is otherwise large.

Under such circumstances I do not think we would be justi-

fied in saying that these statutes create a *new duty* to the person whose property is destroyed by accidental fire. The statutes may have enlarged the duties of the water company, but they have not changed the persons to whom the duties are due. Such company is required to furnish reasonably adequate services and facilities. But to whom? I think to the same persons to whom it owed the duty at the time of and prior to the enactment of this statute,—to the municipality in furnishing water for hydrants, public drinking, flushing, and bathing places, and for the extinguishment of fires, in short for aid in the performance of its governmental functions; to consumers who contract with it for all the other usual purposes. There is no duty cast upon the water company by common law or express statute to furnish water for extinguishing fires to any person other than the municipality. Under the statute quoted the municipality is injured but not damaged by the failure of the water company to furnish water for this purpose. The individual consumer is damaged but not injured by the same failure. Consequently the city must redress its injury by some legal proceeding other than the recovery of damages, and as to the individual consumer the act or omission of the water company in this respect is *damnum absque injuria.* Liability for damages caused by negligence is to the person to whom by law some duty of diligence is due. So that without anything more than a statute which declares that the company shall furnish adequate service and a statute declaring that for failure to do this the company shall be liable to the person injured in treble the amount of damages sustained, we have nothing to change the former law pointing out the person to whom service is due, and only such person is injured. In this opinion I use the word "injury" in its legal sense as contradistinguished from mere loss or damage. I also think this provision for treble damages indicates that the statute has reference to the duties due to consumers of water in which the

amount of damage by delinquency is often small but annoy-
ing to the consumer, and this statute is to discourage such
derelictions and partially recompense the consumer for being
obliged to bring a suit for such small amount.

I do not think the statutes in question are potent to impose
a liability upon the water company on account of inadequate
service for damages occasioned by accidental fire, and conse-
quently that the law as formerly established should prevail.
But for the same reasons here given for absolving the water
company from liability, namely, that the duty to furnish
adequate water service for use in the extinguishment of fire
was a duty due to the municipality and not to the property
owner, the gas company must be held liable. There is as to
it set forth the negligent omission of a duty owing by the gas
company directly to the patron or consumer with which it
contracted and upon whose premises it installed its apparatus.
The order sustaining the demurrer of the water company was
properly made. The order sustaining the demurrer of the
gas company is improper, and there is no misjoinder because
there is only one cause of action stated in the complaint.

A motion by the appellants for a rehearing was granted on
May 14, 1913, and the cause was reargued on September 20,
1913.

To the point that the word "injured" in the law necessarily
means and implies "actionable wrong," counsel for the re-
spondent *Antigo Water Company* cited Bouvier, Law Dict.;
Anderson, Law Dict.; *Hitch v. Edgecombe Co. Comm'rs,*
132 N. C. 573, 44 S. E. 30; *Carstesen v. Stratford,* 67 Conn.
428, 35 Atl. 276, 278; *Springer v. J. H. Somers F. Co.* 196
Pa. St. 156, 46 Atl. 370, 371; *Macauley Bros. v. Tierney,*
19 R. I. 255, 33 Atl. 1, 37 L. R. A. 455; *Broughel v. South-
ern New Eng. T. Co.* 73 Conn. 614, 48 Atl. 751, 754; *Brown
v. Kendall,* 60 Mass. (6 Cush.) 292; *Brittle S. Co. v. Rust,*
10 Colo. App. 463, 51 Pac. 526, 529; *West Virginia T. Co.*

*v. Standard Oil Co.* 50 W. Va. 611, 40 S. E. 591, 56 L. R.
A. 804; *Parker v. Griswold,* 17 Conn. 288, 302–304; *North
Vernon v. Voegler,* 103 Ind. 314, 2 N. E. 821, 824.

The following opinion was filed October 7, 1913:

WINSLOW, C. J.    While the reargument of this case has
not convinced us of error in the result previously reached, it
has convinced us of error in some of the reasoning in the
opinion of the court.    In that opinion it was in substance
held that the utilities law had changed the rule in the *Britton
Case* to this extent, namely, that if a private citizen suffered
a property loss by reason of the wanton, wilful, or reckless
failure of a public water company to furnish reasonably ade-
quate fire protection, the company would be liable to such
citizen in treble damages, notwithstanding the absence of
contract relations between the company and the citizen, but
would not be liable in any amount in case the failure was the
result of inadvertence or mere excusable neglect.

This result was based practically upon two primary con-
siderations: (1) the use of the word "injured" in sec.
1797*m*—93, Stats., which word was said to carry no neces-
sary implication of an actionable wrong; and (2) the fact
that the statute is highly penal in its nature, and hence must
have been intended by the legislature to be applied only to
wilful or wanton acts, in analogy to a line of cases beginning
with *Cohn v. Neeves,* 40 Wis. 393.

We are now satisfied that both of these primary ideas are
mistaken ideas, and the writer desires to assume the blame
for these palpable mistakes so far as he may.

The word "injure" in its accurate and technical legal sense
means to violate the legal right of another, or, what amounts
to the same thing, to inflict an actionable wrong.    This defi-
nition is sustained by all the authorities and law diction-
aries.    The word comes from the Latin words *"in,"* meaning
against, and *"jus,"* meaning a right, and signifies something

done "against the right" of another person, producing either
nominal or substantial damage.    Anderson's Law Dict. title
"INJURY;" Black's Law Dict. title "INJURY;" 22 Cyc. 1064,
title "INJURY," and cases cited in notes; *West Va. T. Co.
v. Standard Oil Co.* 50 W. Va. 611, 40 S. E. 591, 56 L. R.
A. 804.

Now if the word "injured" is used in its accurate legal
sense in sec. 1797m—93, then no new liability is created by
that section (except the liability for treble damages instead of
single damages), unless in some other section of the law there
be some provision giving to private property owners a right
which they did not possess at common law under the prin-
ciples of the *Britton Case.*    Substituting in place of the
word *"injured"* its technical and accurate legal meaning, the
section would provide that any public utility which shall fail
to furnish reasonably adequate service shall be liable to the
person who suffers an actionable wrong thereby in treble dam-
ages.    So read, the section does not attempt to enlarge the
list of actionable wrongs, and unless some other section of
the law enlarges that list so as to include such a case as the
present, it seems impossible to say that the list is enlarged
at all.    It was said in the former opinion that sec. 1797m—
3, which provides that every public utility shall furnish rea-
sonably adequate service and facilities, is simply declaratory
of the common law and adds nothing to the obligations of pub-
lic utilities, and we are still of that opinion.    We have found
no other section which enlarges the list of actionable wrongs
so as to include the supposed wrong in the present case.

While this result renders unnecessary the discussion of
any other questions, it is deemed proper also to say that the
position taken in the former opinion to the effect that
sec. 1797m—93 was intended to extend only to wilful, wan-
ton, or reckless defaults seems entirely untenable.    In many
sections of the law, notably the sections immediately preced-
ing and the section immediately following sec. 1797m—93,

the legislature has provided for the punishment of large numbers of acts and defaults, and industriously differentiated between certain acts which are to be punished when committed wilfully or knowingly and certain others as to which no requirement that they shall be knowingly or wilfully committed appears.  It is quite apparent, therefore, that the legislature had the distinction in mind when the law was framed, and the idea that it intended only to cover wilful or knowing acts or defaults by the provisions of sec. 1797m—93 seems entirely untenable.

In view of the unquestioned legal meaning of the word "injure," the absence of any direct provision in the law indicating any intention to change the rule announced so many years ago in the *Britton Case,* the immense sums invested in public utilities of this nature in undoubted reliance upon the principles laid down in that case, and the tremendous liabilities which the law would impose on water companies, and cities operating their own water works as well, if construed as the plaintiff contends it should be construed, we hold that the rule of the *Britton Case* is not changed nor intended to be changed by the law.  These conclusions necessitate no changes in the mandate.

*By the Court.*—The order sustaining the demurrer of the defendant gas company is reversed with costs, and the order sustaining the demurrer of the defendant water company is affirmed with costs, and the action is remanded for further proceedings according to law.