## CARTER VS. VAN DORN.

UNLAWFUL DETENTION OF LAND. (1) *Remedy under ch.* 151, *R. S., defined and limited.* (2) *Statute penal; remedy not extended; not a substitute for ejectment.* (3) *Not applicable where premises not detained by force; plaintiff properly nonsuited.*

1. The remedy given by ch. 151, R. S., for the unlawful detention of lands and tenements *without force*, is confined to cases in which the relation of landlord and tenant exists between the parties; and no action can be maintained under that statute where such relation does not exist, unless the detainer be *by force. Winterfield v. Stauss*, 24 Wis., 394.

2. Said ch. 151 is highly penal, and the remedy there provided should not be extended to doubtful cases, nor be used as a substitute for ejectment.

3. Defendant made peaceable entry upon premises of which plaintiff claims to have been for over three years in lawful and peaceable pos-

session and occupation as an inclosed pasture and wood lot. After defendant had erected an unfinished house upon the land, plaintiff came thereto, and defendant ordered him away, and forbade him to take any wood from the lot. The next day plaintiff came to the premises, and, on attempting to enter the house by a door, found the door locked, and was forbidden by defendant to enter an open window; defendant also forbade him to take wood from the premises and used some threats and force to prevent his doing so; but plaintiff overcame the force, and took the wood away, and, without returning to the premises, brought this action under said ch. 151. *Held*, that these facts do not show that defendant *detained the premises by force*, within the meaning of the statute; and that the court did not err in nonsuiting the plaintiff.

APPEAL from the Circuit Court for *Green Lake* County.

The action was brought before a justice of the peace pursuant to ch. 151, R. S., and was taken by appeal to the circuit court. The complaint alleges that on the 21st day of March, 1872, the plaintiff was in the lawful and peaceable possession of certain lands therein described, and on that day the defendant made unlawful and forcible entry therein, and unlawfully detains the same from the plaintiff by force and with strong hand. The answer is a general denial.

On the trial of the cause in the circuit court, the plaintiff testified, in substance, that the premises in question were situated five miles from his residence; that he had occupied them four or five years as a pasture, and had obtained fuel therefrom every year; that he built fences in 1868, which, with a stream of water, inclosed the premises; that he made no use thereof after September, 1871, until March following, when he took therefrom three loads of wood, one on the 5th, another on the 19th, and a third on the 21st of that month; that on the 5th he saw a pile of lumber on the premises, and on the 19th he found men at work building a house. He ordered them to desist from doing work there, and they ordered him to take no wood from the premises. The defendant was not present. He went there again the next day, and found the defendant at

work on the house. He went to the house, and the defendant ordered him away, and he left. The defendant also forbade him taking any wood. He returned on the following day, and his testimony as to what then occurred is as follows: "They had the house inclosed. I went to get in at the door, and it was fastened. I went to the south window, and saw them at work there — the defendant, and another man I did not know. The house was fastened up, except that the lower sash was out of the window. I stepped up to the window, and the defendant stepped up with a club about two and a half feet long. He stood there with that club in one hand and a jack-knife in the other. I said to him it was a cold dwelling to live in at that time of the year. He answered something which I do not remember. I forbade them doing any more work on the house, and ordered them away. The defendant replied that he should not go, and ordered me away. I then went out to get some wood, and had been out there probably ten minutes, when the defendant and this gentleman I did not know, and a young man named Kenyon, came out there. The defendant was ahead, and Kenyon behind. They came on a walk. I was cutting wood. The defendant began to talk with me, and forbid my getting wood; and he came on the right hand side of the sleigh; Kenyon stood in front of the horses. Defendant came up on the opposite side, next to the box; the other gentleman came around behind the sleigh. They began to forbid my getting wood there. I kept chopping. The defendant was pretty well riled, and shook his fists, and said I couldn't take any wood off from there unless I went over his dead body. I kept chopping, and made no reply. Pretty soon he began to throw the wood out of the sleigh. I made no remark, but began to chop more and put in. Pretty soon I stepped back and took up the ax, and told him if he threw any more wood out, I would split him open. They talked quite freely, and 'jawed,' and finally he took one man towards the house, and left Kenyon there. Kenyon said he told the de-

fendant he would have a row if he went out there, but he said he would, and he would take my wood away. I went away. I did not stop at the house again."

On his cross examination, the plaintiff further testified as follows: " Q. When you got your wood, where did you go? A. I went home. Q. Did you go of your own free will or otherwise? A. Well, I went of my own free will. Q. This club you speak of and the jack-knife: wasn't it a fact that he stood in the house whittling? A. Not when he first stood there. Q. Did he make any threats, or attempt to hurt you with any stick or anything else? A. He did not threaten me with a stick, but I stood with my head in the window, and he poked all around my nose. It was a cherry stick, about as large as that chain round. He was not whittling when he was talking; he had the knife in the other hand. When I stepped back, he whittled. There were no threats there. The contest seemed to be after I went after wood, about my getting any more wood there. He undertook to throw off my wood. I told him not to do it. He caught hold of more, and threw it out. Then I told him if he.threw any more out, I would split him open."

One other witness was examined on behalf of the plaintiff, but he testified to no additional fact. His testimony tended to corroborate that of the plaintiff.

When the plaintiff closed his testimony and rested, the counsel for the defendant moved that the plaintiff be nonsuited. The court granted the motion, and judgment was afterwards entered against the plaintiff for costs; from which the plaintiff appealed.

*Priest & Carter*, for appellant, argued that the case should have gone to the jury, plaintiff having proven all that was necessary to sustain a verdict, viz., a previous peaceful and un- ·disputed possession, a surreptitious if not forcible entry, and a subsequent forcible detention by defendant. Threats of vio· ·lence and a manifest intention to maintain possession by a

Carter vs. Van Dorn.

"strong hand and a multitude of people" clearly appear. The question is, to what extent a man must resist the threats and force of an intruder upon his premises, in the face of his evident intention to maintain possession, and to what extent imperil his personal safety, in order to place the intruder in an attitude of forcible detention. It is insisted that the case made shows clearly a proceeding by defendant to possess himself of plaintiff's premises, and to put the plaintiff to an action to obtain possession from him. See 16 Wis., 574; 19 id., 187; 24 id., 394.

*Jackson & Halsey, contra,* argued that the evidence failed to show that "force and terror" by a multitude of people and a strong hand, which is required to make out the offense. It is conceded that defendant took peaceable and quiet possession, and erected his buildings peaceably and without molestation. Moreover, defendant made no threats of personal violence, used no force against the plaintiff, and made no effort to drive him from the land. The only threat of personal violence was made by plaintiff against defendant. Plaintiff was not forced off the premises, but went of his own free will. As to the degree of force required to be shown to justify a conviction, see 1 Russell on Crimes, 308; *Willard v. Warren,* 17 Wend., 257; *Commonwealth v. Dudley,* 10 Mass., 402; *Winterfield v. Stauss,* 24 Wis., 394.

Lyon, J. It was held in *Winterfield v. Stauss,* 24 Wis., 394, and is the law of this state, that the remedy given by the R. S., ch. 151, for the unlawful detainer of lands and .tenements without force, is confined to those cases in which the relation of landlord and tenant exists between the parties, and that no action can be maintained under that statute, where such relation does not exist, unless the detainer be by force.

In this case the entry by the defendant was peaceable, and the relation of landlord and tenant did not exist between the parties. Hence, although it be conceded that the plaintiff had

a sufficient previous possession of the premises to entitle him to maintain this action (a proposition, the correctness of which is denied and may well be doubted), and that the entry upon the premises and the detention thereof by the defendant were unlawful, still the plaintiff is not entitled to recover in this action unless he proves that the defendant forcibly detains the premises from him. It follows that, unless the testimony given on the trial tended to prove such forcible detainer of the premises by the defendant, the nonsuit was properly granted.

Does the testimony tend to prove such forcible detainer? Manifestly the mere ordering the plaintiff away from the house, and forbidding him to take wood from the premises, does not tend to prove that the defendant employed force to keep possession of the premises. But the defendant did use force to prevent the plaintiff from taking wood therefrom. However, the force thus used failed to accomplish that purpose. It was overcome by the plaintiff, and he carried away the wood. Moreover, it was not used for the purpose of driving the plaintiff from the premises. There is nothing in the testimony tending to show that the defendant used any force whatever to that end. On the contrary, it appears affirmatively that the plaintiff did what he pleased on the premises, and left them voluntarily. We think it must be held, therefore, that there is no testimony tending to show that the defendant detained the premises by force.

The statute under which this action was brought is highly penal, and its operation should not be extended to doubtful cases. It certainly should not be used as a substitute for ejectment; and it seems to us that in this case an attempt is made so to use it.

Our conclusion is, that the nonsuit was properly ordered, and that the judgment of the circuit court should be affirmed.

*By the Court.* — Judgment affirmed.