TOAL, Appellant, vs. CLAPP and another, Respondents.

*September 25 — October 13, 1885.*

UNLAWFUL DETAINER: EXECUTION: CONSTITUTIONAL LAW. *(1) Holding over after term: Notice to quit. (2) Execution for costs. (3) Action of tort: Imprisonment for debt.*

1. Under subd. 1, sec. 3358, R. S., a tenant holding possession after the expiration of the term by lapse of time, without the permission of the landlord, may be removed without giving him notice to quit.

2. The execution for costs, " as in other actions of tort," authorized by sec. 3366, R. S., may be issued in all cases of unlawful detainer under the statute, whether there was a forcible entry or not.

3. An action for unlawful detainer is an action of tort, and the imprisonment of the defendant under an execution issued therein for the costs is not imprisonment "for debt arising out of or founded on a contract," within the meaning of sec. 16, art. I, Const. of Wis.

APPEAL from the Circuit Court for *Walworth* County. The case is thus stated by Mr. Justice CASSODAY:

" False imprisonment. It appears that, January 15, 1879, the defendant *Clapp,* being the owner and in possession of the premises and dwelling-house in question, verbally leased the same to the plaintiff, *Toal,* for the term of one month, and from month to month until the said lease should be terminated by thirty days' notice given by either party, for the monthly rental of $8. Thereupon *Toal* went into possession and paid the monthly rent as it accrued until February 24, 1883, when *Clapp* duly served upon *Toal* a written notice to the effect that she thereby terminated the agreement and lease under which he *(Toal)* held the premises, such termination to take effect March 31, 1883, which was the end of the rental month, upon which last-mentioned day she thereby required the possession to be delivered to her. *Toal* having failed to quit the premises, *Clapp,* on April 6, 1883, commenced an action against him for the unlawful detention of the premises, before Samuel Bishop, a justice of the peace in Whitewater. April 10, 1883, *Toal* appeared

therein and answered a general denial and that he was in possession under a lease from July 1, 1882, to June 30, 1883. Said issue was thereupon tried before said justice, who, April 12, 1883, found that *Toal* was "guilty of the allegations of the complaint," being substantially as stated above, and thereupon rendered a judgment of restitution therein against *Toal* of said premises, and also rendered judgment against him therein in favor of *Clapp* for $19.77 costs therein. May 8, 1883, at the request of both the defendants, *Clapp* and *Hawes*, the justice issued an execution therein for said costs in the usual form against the body of *Toal*, and placed the same in the hands of the deputy sheriff to be served, and May 18, 1883, the deputy sheriff arrested *Toal* thereon, and conveyed him to and committed him in the county jail by virtue of said execution, and then and there closely confined and imprisoned him therein upon said execution until May 22, 1883, when he was released from close confinement therein, and allowed to go at large upon the jail limits under and by virtue of the usual bond executed therein, and so continued upon the jail limits until May 25, 1883, when he, having sued out a writ of *habeas corpus*, was taken thereon before the court commissioner issuing the same, and after hearing had thereon, he was remanded by the commissioner to the jail limits, where he remained until May 28, 1883, when he was finally released from said imprisonment by the county judge, but only upon proceedings had before said county judge for that purpose, and upon his making the oath prescribed by law for the discharge of persons in custody and imprisonment upon civil process. Said *Clapp* is a woman and said *Hawes* is her brother.

"This action is brought by *Toal* against *Clapp* and *Hawes* for false imprisonment upon a complaint alleging, in effect, the facts above stated, and also that *Hawes* had no pecuniary interest in the imprisonment of *Toal*, nor any reason therefor, other than to gratify his malice and spite, and to ad-

vance the interest of *Mrs. Clapp* by forcing *Toal* to pay the judgment of $19.77 for costs; and that he had otherwise wrongfully assisted and counseled his said sister. Upon issue being joined and the cause called for trial, the defendants demurred to the complaint *ore tenus*, and such demurrer was sustained by the court, and, no amendment being applied for, the complaint was dismissed. From the judgment entered accordingly the plaintiff appeals."

*Henry Heady*, for the appellant.

For the respondents there was a brief by *Weeks & Steele*, and oral argument by *Mr. Weeks*.

CASSODAY, J. Was the plaintiff lawfully imprisoned on the judgment and execution for costs in the unlawful detainer suit? His tenancy ended and was terminated March 31, 1883, by notice given in accordance with the stipulation contained in the lease under which he had up to that time held the possession. By the same notice he was required to deliver the possession of the premises to *Mrs. Clapp* on that day. He held over and refused to so deliver. Of course such holding over was not under the lease, for that had been terminated, and the plaintiff no longer had any right under it. Such holding over, therefore, was without any authority from *Mrs. Clapp* and contrary to the notice and demand made by her upon him. Such being the condition of things, did the statutes authorize his removal without other or further notice? They expressly declare that "any tenant or lessee . . . for any part of a year . . . of any real property . . . may be removed therefrom . . . (1) when such person holds possession after the expiration of the term by lapse of time . . . and without the permission of the landlord." Sec. 3358, R. S. Here, upon the notice being given as provided by the express stipulation in the lease, the term expired by lapse of time, March 31, 1883, and the holding over thereafter was con-

fessedly without permission of *Mrs. Clapp*. The time of the expiration of the lease was uncertain until the notice was given, when it became fixed and certain. The contract thereupon became the same, in effect, as though it had been in writing expressly providing that it should terminate or expire at the time named. Under such a lease both parties would necessarily know the day on which it would expire by lapse of time. Knowing the fact, there would be no necessity of being notified of it, and the statute quoted did not require it. Under the second and third subdivisions of the same section, where the proceeding is after default in the payment of rent, or where the tenant holds over without permission, contrary to some condition or covenant in the lease, it is otherwise, and hence in such cases a three days' notice must be given. But neither of those subdivisions have any application to a case where the expiration of the term is by lapse of time. This, as we have seen, after the notice was given, was such a case. This being so, such holding over clearly came within the language of the statutes quoted, and hence the plaintiff was liable to be removed from the premises without other or further notice.

This gave *Mrs. Clapp* the right to such judgment of restitution as the statutes authorized the justice to render in such a case. The statutes expressly declare that "if upon the trial of *any* such action the justice . . . find the defendant . . . guilty of the allegations in the complaint, the justice shall thereupon enter judgment for the plaintiff to have restitution of the premises, and tax the costs for the plaintiff . . . against such defendant. . . . Such justice shall issue execution in favor of the plaintiff for such costs *as in other actions in tort*, and also issue a writ of restitution." Sec. 3366, R. S. It is claimed that this section only applies to cases mentioned in sec. 3360, in which there have been an "unlawful or forcible *entry and*" detention. But it is the only section regulating the entry of judgment under that chapter. Besides, it expressly provides that

"when the action is brought under the provisions of sec. 3360," the justice "shall impose a fine," etc., and then provides for the collection of such fine. From this it appears, by necessary implication, that the section does apply to a class of cases not coming under sec. 3360, and in which no fine can be imposed, for the reason that there has been no "unlawful or forcible *entry and*" detention, but only an "unlawful detainer," as in the case before us. But an "unlawful detainer" is necessarily tortious, and hence the provision that "such justice shall issue execution in favor of the plaintiff for such costs *as in other actions in tort.*" In such other actions in tort "an execution may be issued against the person of the defendant when the action in which judgment is rendered is founded on tort, or is for a penalty," etc. Sec. 3681, R. S. That such "unlawful detainer" is tortious is manifest from the fact that it subjects a party to treble damages when, as here, the action is not "brought for the nonpayment of rent." Sec. 3367, R. S. That this provision giving treble damages "is penal in its nature" there can be no question. *Chase v. Dearborn,* 23 Wis. 445. The action was for "unlawful detainer," and made tortious by express statutes, and hence the plaintiff was not "imprisoned for debt arising out of or founded on a contract, express or implied," within the meaning of sec. 16, art. I, Const. of Wis. This is so clearly established by the authorities as to require no discussion. *Howland v. Needham,* 10 Wis. 495; *In re Mowry,* 12 Wis. 53; *Cotton v. Sharpstein,* 14 Wis. 226; *In re Kindling,* 39 Wis. 60; *Baker v. State,* 54 Wis. 378; *In re Milburn,* 59 Wis. 30 *et seq.; In re Burrows,* 33 Kan. 675.

The view we have taken of the question considered renders it unnecessary to consider the others so thoroughly discussed by counsel, as they are each dependent upon the one already determined.

*By the Court.*— The judgment of the circuit court is affirmed.