FEIGES and others, Appellants, vs. RACINE DRY GOODS COMPANY, Respondent.

*April 10—May 9, 1939.*

For the appellants there was a brief by *Wilbershide & Baumblatt* of Racine, and oral argument by *L. P. Baumblatt* and *J. C. Wilbershide*.

For the respondent there was a brief by *Simmons, Walker, Wratten & Sporer* of Racine, and oral argument by *Charles F. Wratten* and *Harold J. Sporer.*

FOWLER, J.   As appears from the foregoing statement this case is an appeal from a judgment in an unlawful-detainer action.   A justice of the peace entered judgment for restitution.   The defendant paid the costs and appealed to the circuit court.   On appeal the facts were stipulated and found as recited in the statement preceding the opinion.   The trial judge first held that the judgment must be affirmed and entered an order for such judgment.   But during the term and before judgment was entered he set aside this order and entered a judgment of reversal and for recovery of the costs paid to the justice on appealing, the amount of its taxable costs in justice court and costs on appeal, a total of $57.28.   From this judgment the plaintiffs appeal.

After the court had ordered the entry of judgment as next above indicated the defendant moved to set aside the judgment first entered and for a new trial on the ground of newly discovered evidence, the evidence being that given in an action to recover treble damages decided herewith, *Feiges v. Racine Dry Goods Co., post,* p. 284, 285 N. W. 805, to the effect that the plaintiffs in order to enable them to recover treble damages incited the strikers to prevent delivery of possession of the premises until defendant's right to possession had expired and aided and encouraged them in so doing.   The court denied this motion, but concluded as matter of law on the stipulated facts, (1) that the payment of costs to the justice on taking its appeal and payment to the sheriff of his fee for serving the writ of restitution did not constitute a voluntary performance of the judgment of the justice court, and did not waive the defendant's right to have the judgment reviewed; (2) that the inability of the defendant to remove until June 24th did not constitute an unlawful possession of

the premises within the meaning of ch. 291, Stats., and the defendant was (not guilty of an unlawful detainer; and (3) that the judgment of the justice court should be reversed.

Ch. 291, Stats., is entitled "Unlawful Detainer." Sec. 291.01 thereof provides that "any tenant . . . for any part of a year, or for one or more years of any real property, who holds possession after expiration of the term without the consent of the landlord, may be removed as provided in the chapter." Proceedings were taken before the justice as in the chapter provided. Another section of the chapter has direct bearing upon the instant case, sec. 291.10, which provides that if the plaintiff recovers, except in cases for non-payment of rent, he shall be entitled in a separate action to recover treble damages, with costs of suit, against the person found guilty for any injury sustained by reason of any "unlawful or forcible entry or detainer, or for holding any unlawful possession" by the defendant.

The sole ground of error laid by the plaintiffs is that the court improperly held that in not surrendering possession of the premises for twenty-six days after its lease expired the defendant was not guilty of unlawful detainer because he was prevented from so doing by the threats of violence by its striking employees and their picketers, and its remaining in possession was therefore not unlawful in the sense of that word as used in the statute.

To get the meaning of the word "unlawful" in our present statutes we may go back to our territorial statutes of 1839 whence the present statute is derived. It is there entitled "An act to prevent forcible entries and detailers." Except as to differences in the justice court practice the act is so much in the exact language of the Michigan statute in force as to leave no possible doubt of its derivation. Wis. Terr. Stats. 1839, p. 148; Mich. Rev. Stats. 1838, p. 490.

Section 5 of the Michigan statutes provides that the "complainant of any forcible entry *and* detainer . . . shall also

: . . . recover treble damages, with costs of suit, by an action of trespass against the offender or offenders." Section 6 of the Wisconsin territorial statutes, page 150, is the same except that the word "or" is substituted for the word "and" italicized above.

Section 8 of the Michigan statutes provides that in cases of holding over under a lease the complainant recovering shall be entitled to an action of trespass against the person complained of, and if the defendant be found guilty on the trial he may recover treble damages from the time notice is given to quit and until that time *simple* damages only.

Section 9 of the Wisconsin territorial statutes, page 150, is the same except that the word "simple" above italicized is omitted.

It is to be noted that in both the Michigan and Wisconsin statutes above stated the treble damages mentioned were to be recovered in an action of 'trespass'. This action at common law was a tort action. Thus, the act, the holding over involved, was necessarily a tortious or wrongful act. But in the action of trespass an intentional act on the part of a person on the land of another was involved to render him liable. Thus, if one was forcibly and against his will carried onto the land of another, he was not liable in trespass, but the persons who carried him onto the land were liable in trespass therefor. 1 Restatement, Torts, p. 361. It is also to be borne in mind that trespass falls within the class of "intentional harms." Where there is no intentional, no voluntary act, there is no tort, no trespass. Applying the law of trespass to the situation involved there was no trespass by the defendant—there was no intentional harm, no voluntary act done by it. The trespass was by the strikers and picketers who against its will forcibly or by threats of violence prevented it from surrendering timely possession of the premises. Such action in trespass for treble damages as would lie under those statutes in the situation here present would lie

against the strikers and picketers, if anyone. They, not the defendant, are "the offenders" and they, if anyone, would be so liable.

The word "trespass" does not now appear, and since 1849 has not appeared in our statutes relating to recovery of treble damages in actions of forcible entry and unlawful detainer. The words "trespass on the case" appear in the present Michigan statutes. Sec. 27.1997, Mich. Stats. Anno. In our statutes of 1849 they appear as in the 1839 territorial statutes. They do not appear in the statutes of 1858 or since. The words "of trespass" next after the word "action" are omitted. (However the nature of the action in the statutes of 1858 is indicated by the provision that a fine if imposed should be enforced as in actions "*ex delicto.*") Sec. 16, ch. 151. But the omission of "of trespass" in the 1858 statutes and since is because common-law terminology in (designation of actions fell out of our statutes with the code of 1856. Since then we have only two kinds of actions, civil and criminal, and special proceedings. Secs. 260.02, 260.03, and 260.05, Stats.) But the separate action that now lies to recover treble damages incident to recovery in actions of unlawful entry and detainer is the same action—has the same attributes—as the action of trespass under the acts of 1839 and 1849, and the same class of detention is now essential to the action of unlawful detainer that was essential in 1839.

Several early decisions of this court imply that the action for unlawful detainer lies only for detentions by the tenant that are wrongful as distinguished from detentions that are against his will and which it is impossible for him to avoid. It is said in *Ela v. Bankes* (1873), 32 Wis. 635, 638, that the reason for the action is that the tenant is "in some sense a wrongdoer;" in *Toal v. Clapp* (1885), 64 Wis. 223, 227, 24 N. W. 876, that the action is "necessarily tortious;" in *Newton v. Leary* (1885), 64 Wis. 190, 194, 25 N. W. 39, that "it is the nature of the entry or detainer which constitutes a cause of action;" in *Carter v. Van Dorn* (1874), 36

Wis. 289, 294, that the statute "is highly penal, and its operation should not be extended to doubtful cases," and this statement is reiterated in *Strimple v. Parker Pen Co.* 177 Wis. 111, 116, 187 N. W. 1001. The defendant herein was in no sense a wrongdoer. There was nothing tortious in its conduct. The nature of the detainer was therefore not such as to constitute a cause of action for unlawful detainer.

It is stated in 16 R. C. L. p. 1171, § 692, that "if the holding over is by a sublessee of the tenant against his [tenant's] will the latter cannot be held liable [for a statutory penalty] though the sublessee himself may be," thus exonerating the tenant if his holding over is not voluntary. It is also there stated that the tenant is not liable "where the holding over is accidental as where it is caused by inability to move due to sickness." The citation in support of the latter statement is *Herter v. Mullen,* 159 N. Y. 28, 53 N. E. 700, 44 L. R. A. 703, upon which the trial court relied, and which we discuss later. The general rule is stated in Ruling Case Law, *supra,* that the holding over must be wilful to warrant imposition of penalties. The cases cited to the point of wilfulness are not all detainer cases, and some of the statutes involved contain the word "wilful." However, one of them, *Jones v. Taylor,* 136 Ky. 39, 123 S. W. 326, Ann. Cas. 1912 A, 276, is a case of forcible detainer for holding over, and the word "wilful" does not occur in the statute. This case is cited in *Strimple v. Parker Pen Co., supra,* to the point that statutes imposing penalties must be strictly construed. Wilfulness, though not contained in the detainer statute there involved, was held necessary to impose the penalty of double rent.

We consider that the rule above indicated should be applied here. To impose treble damages for not doing something that the defendant intended and had arranged and wished to do, and that he was prevented from doing by conduct of others beyond his power to control would be so severe that it cannot be the basis of an unlawful detainer action wherein the recovery of possession *ipso facto* imposes the imposition

of such penalty. The infliction of a penalty and a judgment that leads to such result can only be warranted by a holding over that is intentional, voluntary, and within the defendant's power to prevent or avoid. Only a tortious act by the tenant, at least tortious in the sense that it is an intentional failure to perform an obligation or duty, can constitute basis for an action in which such a judgment must be rendered. The plaintiffs herein are demanding damages which trebled amount to over $12,000 because of the judgment for recovery of possession of the leased premises. Manifestly, such mulcting of the defendant for a holding over that was involuntary, against its will, and beyond its power to prevent, is not within the contemplation of the statute that provides the summary action of unlawful detainer. To hold that the legislature entertained intent of imposition of such a penalty would convict them of unreasonableness and oppression.

The trial court seems to have based its reversal of its own first decision on the case of *Herter v. Mullen, supra.* In that case the tenant was holding under a lease for a year. He intended and had given notice that he would quit at the end of the term. When the term ended a member of his family was so sick that the attending physician was of opinion that her removal would endanger her life. The tenant vacated all of the premises except the room she occupied and remained in possession of that room for fifteen days after the termination day of the lease. Seven months later the landlord sued for seven months' rent, on the theory that by holding the room for the fifteen days the lease became in force for another year. It was held that as the retention was not voluntary, but excusable under the circumstances, the rule respecting holding over did not apply. The decision was by a divided court, three justices dissenting. The decision went upon the point that retaining occupancy of the room under the circumstances was not a holding over within the reason of the rule and as the reason of the rule did not apply neither

did the rule. The rule as to extension of a lease by a tenant's holding over is based upon the proposition that the retention of the leased premises is the voluntary act of the tenant, and from this fact the law implies a contract to continue the tenancy on the terms of the lease. It is said in the *Herter Case, supra,* p. 34:

"Whenever the law implies a contract from the act or conduct of the party, the act itself, whatever it may be, must be voluntary. The law does not imply a contract or obligation from an act of the party which . . . results from force or coercion of any kind, or is due to stress of circumstances which involves peril to his life or that of some member of his family."

The instant case is not one for recovery on an implied contract. But it is within the reason of the *Herter Case.* It is one based on a statute the results of which from the imposition of treble damages under another statute *in pari materia* are highly penal. Penalties are not imposed except for tortious acts. To support penalties a wrong must have been intentionally committed. The rule above stated that common-law rules will not be applied when the application of them would be absurd, unreasonable, or oppressive, and not within the reason of the rule, applies also, on occasion, to statutes. We considered this point in the recent case of *State ex rel. Jackson v. Leicht, ante,* p. 178, 285 N. W. 335. See that case and the case of *Rice v. Ashland County,* 108 Wis. 189, 84 N. W. 189, therein cited. This is in accord with the holdings of this court under other statutes imposing treble damages. *Cohn v. Neeves,* 40 Wis. 393, 397, involved a statute imposing liability for treble damages for the conversion of logs lying on the lands of another where they had drifted. The question at issue was stated by the court to be: "Does the statute give the treble damages when the conversion is merely a technical conversion in law, as in the case before us; or was it only intended to apply to cases where

some ingredient of wilfulness, wantonness or evil design enters into the act?" The court said (p. 398) :

"We can hardly think such a case [technical conversion] was within the contemplation of the legislature," and also said, page 401, that to impose treble liability—

"The evidence must satisfy the jury that the conversion was not only against the consent of the plaintiff, but was attended by circumstances of bad faith and intentional wrong, in order to bring it within the penal provision. For, unless the conversion was wilful or wanton, the plaintiff was entitled to recover only single damages."

A like ruling was made in *State v. Railway Companies,* 128 Wis. 449, 108 N. W. 594, where it is said (p. 512) :

"The basic theory of these cases is that the court will apply substantially the same rule of construction to such statutes as is applicable to stipulated forfeitures in ordinary contracts, to the extent of determining whether they were intended to apply literally or not, the presumption being indulged in, that nothing absurd or unreasonable was in the legislative mind, and that when the literal sense would lead to the contrary it should be restrained accordingly, by a somewhat arbitrary assumption that the legislature had in mind defaults only of a nature in harmony with the remedial feature provided, in the absence of some clearly expressed indication to the contrary. That rule for construction may not, as said in *Seeman v. Biemann,* 108 Wis. 365, 84 N. W. 490, be very logical, but it is a just one and has been so firmly established that it may well be thought to be in the legislative mind in enacting laws, the same as it is presumed to be in the minds of parties in entering into contractual relations."

*Krom v. Antigo Gas Co.* 154 Wis. 528, 535, 140 N. W. 41, 143 N. W. 163, which involved acts and omissions in violation of the utility act and treble damages for violation, considered—

"The question whether . . . all acts and omissions in violation of the utilities law, however trivial and unintentional, are to be punished by the imposition of treble damages, in addition to a criminal penalty, or whether only wilful acts

and omissions are so to be punished. The law nowhere contains the word 'wilful,' and it is strongly urged that if we construe it to cover only wilful acts, and acts which by reason of their wanton or reckless character are legally equivalent to wilful acts, we shall be construing words which are so plain as to prohibit construction, and thus in effect encroach on legislative powers. This argument would possess much strength were it not for the fact that this court, in a series of decisions commencing many years ago, has con- strued similar statutes highly drastic and penal in their nature as not covering acts or omissions resulting from mere inadvertence or excusable neglect."

After citing and discussing the *Cohn Case, supra, Schumacher v. Falter,* 113 Wis. 563, 89 N. W. 485, and *Johnson v. Huber,* 117 Wis. 58, 93 N. W. 826, providing penalties for failure to discharge mortgages, the *Railway Companies Case, supra,* the opinion finally states (p. 537) :

"Viewing the statute in the light of the decisions, we do not feel that we can do otherwise than construe it [the statute relating to treble damages] as a statute covering only wilful breaches of duty."

It seems to be conceded by counsel for plaintiffs that where a party has by a contract incurred an obligation that he is prevented by the public authority from performing, as moving from a house under quarantine because containing inmates afflicted with contagious disease (*Regan v. Fosdick,* 19 Misc. 489, 43 N. Y. Supp. 1102), he is released from a penalty prescribed for nonperformance of the obligation. We perceive no difference, in reason, between a person's not doing a thing because the public authorities prevent it, and not doing a thing because the public authorities do not so protect his possession as to enable him to do it when it is their duty so to protect him. It was the duty of the authorities to protect the defendant from the unlawful acts of the pickets and strikers and their sympathizers. The law does not compel a man to do that which it is impossible for him to do. Broom's

Legal Maxims (4th ed.), 178. The law does not impose an obligation to do what is impossible. *"Impossibilium nulla obligatio est."* At the time of the withholding of plaintiffs' premises municipal government had temporarily broken down. Municipal authority had yielded to mob action and had failed to afford the defendant the protection necessary to enable it to deliver possession of the premises. The defendant was as effectively prevented from delivering possession as it could have been by flood, riot, insurrection, or war. The defendant cannot be penalized for what it was absolutely impossible for it to do. As the penalty of treble damages follows *ipso facto* from the rendition of a judgment for delivery under the statute, such a judgment could not lawfully be rendered. It is plain in the instant case that the plaintiffs knew that the defendant would deliver possession as soon as it possibly could, and that they brought the unlawful-detainer action for the purpose of collecting treble damages. That was the only possible advantage to them that could be gained by it. The defendant was committing no wrong and the plaintiffs knew it. The defendant was not detaining the possession of the premises. It was doing nothing unlawful within the meaning of the statute. The only detaining and the only unlawfulness involved are those of the picketers and strikers and their sympathizers. We consider the circuit court was correct in holding as it did.

We also consider that the court was correct in holding that the defendant's payment of the costs on appeal did not waive any of its rights. Appeal was its only method of protecting itself from enforcement of the judgment of the justice court and payment of the costs of the justice court was a condition precedent to appeal. Sec. 306.02, Stats. The payment to the sheriff of his fees for serving the writ of restitution and the payment for removal of defendant's goods under the writ directly to the trucker instead of to the sheriff were obviously done to avoid the penalty of treble damages in the view that if the plaintiffs did not pay these items they could not recover

treble damages on those items. Whether this view was correct or not we need not consider under our holding that the judgment for restitution was erroneous.

We should perhaps notice the claim of the plaintiffs that the statutes involved were taken from Michigan, and that prior to their taking the Michigan courts had construed them to impose absolute liability for treble damages as a result of holding over by a tenant. It is true that the statutes were taken from Michigan, but it is not true that they had been construed by the Michigan courts when taken over. The statutes, as above shown, were taken over from Michigan in 1839. The first case cited in support of this contention is *Hogsett v. Ellis* (1868), 17 Mich. 351. We do not consider that the action of forcible entry or unlawful detainer is involved in that case, or that anything is said therein bearing upon the nature of such actions. It was an action to recover rent, an action of *assumpsit*, not trespass. The next Michigan case cited, *Shaw v. Hoffman* (1872), 25 Mich. 162, was one of forcible entry. A tenant sued his landlord for treble damages on the ground that the landlord forcibly evicted him and forcibly kept him out of possession. It is to be noted that the Michigan statute expressly provided that forcible detention was essential to create the action where entry was rightfully obtained. The court held that there was no forcible eviction because there was no violence or threats of violence by the landlord when he entered the premises and no forcible detention. We do not perceive that the case has any bearing on the instant one. The next Michigan case is *Lane v. Ruhl* (1894), 103 Mich. 38, 61 N. W. 347. This was not a case of involuntary holding over under a lease—a holding over due to stress of circumstances beyond the tenant's power to overcome. It was a case of holding over under a claim of right so-to-hold in which a jury found that the tenant held over in a good-faith belief that he had such right. The action was in trespass under the terms of the Michigan statute for treble damages and it was held that such damages were

recoverable. The case did not involve circumstance of involuntary holding over here involved. The case also holds that notwithstanding the penalty of treble damages the statute in force not containing the word "wilful," the word "wilful" should not be read into it. These rulings are both beside the instant case because the tenant's act in that case was voluntary and *intentional*. Here we have an involuntary absence of action, force by violence, a case of impossibility of performance. This Michigan case was decided long after the decisions of this court above cited and would not require us to follow it even though parallel in its facts, and would be of slight force as authority if contrary to our own on the point of tortiousness. The point that recovery of treble damages under the statute in force when the case was decided was by "action of trespass or trespass on the case," and therefore an action in tort, seems not to have been considered.

*By the Court.*—The judgment of the circuit court is affirmed.