FEIGES and others, Appellants, vs. RACINE DRY GOODS COMPANY, Respondent.

*April 10—May 9, 1939.*

For the appellants there was a brief by *Wilbershide & Baumblatt* of Racine, and oral argument by *L. P. Baumblatt* and *J. C. Wilbershide*.

For the respondent there was a brief by *Simmons, Walker, Wratten & Sporer* of Racine, and oral argument by *Charles F. Wratten* and *Harold J. Sporer*.

FOWLER, J. This case is a sequel to the case between the same parties decided herewith, *Feiges v. Racine Dry Goods Co., ante,* p. 270, 285 N. W. 799. The former was an action of unlawful detainer brought in justice court under sec. 291.01, Stats., in which delivery of possession was adjudged, a writ of restitution was issued and goods of the defendant were removed and possession of the premises were delivered under the writ. The defendant appealed the judgment to the circuit court where a trial *de novo* was had, the judgment of the justice court was reversed and the action dismissed on the merits. Without waiting for the outcome of the justice court case on appeal the plaintiffs brought an action under sec. 291.10, Stats., to recover treble damages. The amount of such damages claimed exceeds $12,000. Damages were also demanded in separate causes of action included in the complaint under covenants of the lease under which defendant occupied the premises because the premises were not in good condition when delivered, and for recovery of taxes on the premises accrued prior to expiration of the lease.

The plaintiffs assign as error of the trial court, (1) not holding the judgment of the justice court as first affirmed by the trial court to be *res judicata* on the question of unlawful possession; (2) ruling that a holding over by a tenant must be wilful to entitle the landlord to treble damages; (3) certain findings of fact by the trial court are contrary to the great weight and clear preponderance of the evidence.

Assignments (1) and (2) above are readily disposed of. As stated in the statement of facts preceding the opinion in the unlawful-detainer case, which is here referred to and made a part hereof so far as material hereto, the trial judge in that case first decided that he must affirm the justice court

judgment and order entry of a judgment of affirmance. During the term such order was made and before judgment was entered the court set aside such order, directed entry of judgment of reversal, and such judgment was entered during such term. That a court of general jurisdiction has complete control of its orders and judgments during the term in which they are made or entered, except in cases especially covered by statute, not here applicable, is not open to question. *Turner v. Nachtsheim,* 71 Wis. 16, 36 N. W. 637. This rule is so well known as not to need citations to support it.

(1) It is quite true that the judgment in the unlawful-detainer action is *res judicata* on unlawful holding over, but the judgment on that point that is controlling is the circuit court judgment, the judgment affirmed on this appeal, to the effect that the premises were *not* unlawfully withheld within the meaning of the statute.

(2) The alleged error that the court erred in holding that a holding over must be "wilful" in order to be within sec. 291.10, Stats., is covered by our holding in the unlawful-detainer case. That action having been dismissed on the merits, and being *res judicata,* it follows that there can be no recovery of treble damages in this case. The action for such damages lies only in case the judgment of the justice court for possession of the premises is valid.

(3) The action comprises three separate claims for damages: (a) Actual damages for withholding possession which we assume is included in the claim for treble damages; (b) damages under a covenant of the lease to deliver possession of the premises "in good condition and repair;" and (c) recovery of taxes under a covenant of the lease providing for payment of taxes on the premises by the lessee. The assignments of error as to insufficiency of the evidence to support the findings will be taken up under headings (a) and (b).

(a) It is conceded by the defendant that by reason of its goods being in the premises from June 1st to June 26th the

defendant would be liable for the damage resulting to the plaintiffs from the defendant's occupying the premises with its goods but for the acts of the plaintiffs in inciting the strikers to prevent the defendant from removing its goods until after June 1st in order to enable the plaintiffs to collect treble damages. The contentions of the parties as to the measure of damages for this occupancy widely vary. The defendant claims such measure is, at most, the rental for twenty-six days according to the terms of the lease. The plaintiffs lay the actual damages as follows: Rental for June, $1,333.33; taxes for June, $217; costs in forcible-detainer action, $15.98; sheriff's fees in forcible-detainer action, $2.50; attorney's fees, $1,000; sheriff's cost of removal on writ of restitution, $1,692.26; total, $4,261.07.

As to the actual damages, the trial court denied them because it found:

"8. That the plaintiffs, in an effort to subject the defendant to treble damages and for that purpose, deliberately and intentionally participated in preventing defendant from removing its stock in trade, furniture, and fixtures from the demised premises until after June 1, A. D. 1937, by inciting, encouraging, and urging persons who were then engaged in a labor dispute with the defendant and who were maintaining a picket line about the demised premises and their sympathizers to maintain such strength and show and threat of force and violence as absolutely to prevent removal of defendant's stock in trade, furniture, and fixtures from the demised premises, and by holding forth the promise of and by making financial contribution to such persons engaged in a labor dispute with the defendant, and that in so far as they could, the plaintiffs contributed to the causes making it impossible for the defendant to move its stock in trade, furniture, and fixtures out of the demised premises within the time limited in their lease."

The plaintiffs attack this finding as unsupported by the evidence. Frances Serie, a picket during the strike, who had clerked for the defendant eleven years at the time of the trial,

testified in substance that she saw three of the plaintiffs on the picket line almost every day watching to see what the pickets were doing; they quite often talked to the pickets; the main thing they talked about was keeping the defendant in the old store until June 1st, and they could get treble rent for that month; she heard Julius say that a couple of times, once heard Ralph say it; they notified the pickets the defendant had trucks outside the city and the strikers should be on the watch; said to be sure and keep the defendant in the building; she went with other strikers when they collected $25 from plaintiffs; one of the party said "is that all we are to get," and they said "isn't that enough;" the pickets suggested advertising it in a local paper, but plaintiffs said keep it quiet, they didn't want anyone to know they had given strikers money. What Feiges said gave them the impression that the strikers would get some money if they could keep defendant in the building until June 1st; this was said during May. She heard one of the Feiges say defendant was threatening to bring trucks and there would be bloodshed.

Mrs. Starke, also a picket and employee, testified to the same effect. She saw the Feiges after picketing started; they were over there in front of the store all the time; they were encouraging the strikers about staying in strike line; one said try to keep the strike line until June 1st; they could then sue for triple rent; they would make plenty out of it and would see "you girls" are taken care of; they sent for witness; she went to their (Feiges') store; was asked to the back part as customers were around; Mr. Feiges said "we have a little money for you;" she asked if that was all or a part payment; he asked what she meant; she said "I thought you were going to give us a nice check;" he said "take this cash and don't say anything about it; if anybody hears about this it is going to be just too bad" for them both.

Miss Nielsen testified: Ralph talked to a group she was in on picket line for most an hour one night in May; said if

defendant could be kept in another month they could collect triple rent.

Mr. Ricchio testified : Heard Feiges say they could collect triple rent if defendant kept in until after June 1st.

There was similar testimony from several others. The trial court might properly believe their testimony, although it was denied by plaintiffs. The finding was clearly supported by the evidence.

The fact being found as above stated, it follows that the plaintiffs cannot recover in their suit to recover any damages, either treble or actual, resulting from acts which they themselves had incited or encouraged. They participated in preventing the defendant from moving from the building. The principle involved is stated in *Lee v. Hammond,* 114 Wis. 550, 558, 90 N. W. 1073, a criminal-conversation case, wherein the following instruction was inferentially approved :

"If the jury found from the evidence that the plaintiff 'knew that his wife was about to meet the defendant for the purpose of having criminal intercourse with him, and by words or acts encouraged her to do so,' then they could 'award him no damages on account of the commission of the act so encouraged by him.' "

The principle is well stated in a quotation from 1 Jaggard, Torts, 199, given in *Goldnamer v. O'Brien,* 98 Ky. 569, 573, 33 S. W. 831, 56 Am. St. Rep. 378 :

"Harm suffered by consent is not, in general, the basis of a civil action. . . . If the defendant is guilty of no wrong against the plaintiff except a wrong invited and procured by the plaintiff for the purpose of making it the foundation of an action, it would be most unjust that the procurer of the wrongful act should be permitted to profit by it."

The plaintiffs by their inviting and encouraging the strikers to keep the defendant from removing from the leased premises became joint tort-feasors with them, and as such they cannot base a cause of action on their own illegal acts (1 Cooley, Torts (4th ed.), p. 55, § 31), or for like reason on illegal acts which they incited and encouraged. It follows

that the plaintiffs cannot recover for any of the items charged above enumerated. As there can be no recovery at all it is unnecessary to consider what the measure would be had the plaintiffs by their conduct not barred themselves from recovery.

(b) The court found:

"15. That the building upon the demised premises was in good condition and repair at the time the defendant removed therefrom on June 26th, A. D. 1937, and that plaintiffs have established no damage to said building beyond that ordinarily incident to the use of such premises for department-store purposes over a long period of time and which was within the reasonable contemplation of the parties in making the lease in question."

The plaintiffs claim that this finding is contrary to the evidence, but we consider it sufficiently sustained. There was a ten-year lease. It stipulated for removal by defendant of trade fixtures, and that implied right of installing trade fixtures and the right to do whatever was necessary to install them and remove them. The provision of the lease which plaintiffs claim was violated is that the lessee would at termination of the lease "surrender and deliver up to the lessors the [leased] premises, together with all the improvements thereon [except trade fixtures], and improvements then standing upon the demised premises shall then be in good condition and repair."

(c) There is no contention that the defendant is not liable to pay the part of the taxes for the year 1937 apportionable to the first five months of the year or as to the amount of these taxes. The defendant offered judgment for this amount prior to trial and the plaintiffs failed to accept it. The recovery allowed by the court did not exceed, but was for that amount, from which the court deducted the cost of trial. This was all in accordance with secs. 269.02 and 269.04, Stats.

*By the Court.*—The judgment of the circuit court is affirmed.