MENNE and others, Appellants, vs. CITY OF FOND DU LAC, Respondent.*

*June 4—June 22, 1956.*

---

* Motion for rehearing denied, with $25 costs, on September 11, 1956.

For the appellants there was a brief by *St. Peter & Hauer* of Fond du Lac, and oral argument by *George M. St. Peter* and *Albert J. Hauer*.

For the respondent there was a brief by *Frederick K. Foster,* corporation counsel, and *Worthing & Calhoun,* special counsel, and oral argument by *Mr. Kenneth E. Worthing* and *Mr. Foster*.

A brief was filed by *Willink & Thompson* of Madison, for the Wisconsin Farm Bureau Federation, Co-operative, as *amicus curiae*.

BROADFOOT, J.   To sustain their cause of action the plaintiffs attack the decision in *Huber v. Merkel,* 117 Wis. 355, 94 N. W. 354, which was discussed in the companion case. It is contended that the decision in that case should not control in the present case for several reasons: (1) That the decision therein was not based upon the police power; (2) that the decision does not correctly state the common law; (3) that the decision has been severely criticized by writers and by the courts of other states; (4) that the decision was based upon a lack of understanding of underground water; (5) if it is decided that the *Huber Case* correctly stated the common law, it should be reversed.

It is true that the legislation attacked in the *Huber Case* was not based upon the police power. That issue was discussed in the companion case.

It is contended that the *Huber Case* did not correctly state the common law; that *Acton v. Blundell* (1843), 12 Mees. & W. 324, 152 Reprint 1223, was the first English decision

determining the rule as to the rights to subterranean waters as between adjacent landowners, and that the common law is restricted to English statutes and decisions in effect at the time of the American Revolution. Sec. 13, art. XIV of our state constitution reads as follows:

"Such parts of the common law as are now in force in the territory of Wisconsin, not inconsistent with this constitution, shall be and continue part of the law of this state until altered or suspended by the legislature."

The common law in effect at the time of the adoption of our state constitution is difficult of definition. We do not think that it is confined to English statutes and the decisions of English courts. In *Feiges v. Racine Dry Goods Co.* 231 Wis. 270, 285 N. W. 799, reference was made to Michigan statutes that were in force at that time. Perhaps the term "common law" is broad enough to embrace customs and usages and legal maxims and principles in vogue at that time. We do not find that the decision of *Acton v. Blundell, supra,* was mentioned in the *Huber* decision. It is true that it was cited in the appellant's brief along with decisions from some of the eastern states. Assuming, however, but without deciding, that the *Huber* decision did not correctly state the common law, it did state a rule that was reached and is adhered to in several other states and which is often referred to as the common-law rule. It determined that the use of percolating water underneath an owner's land is a property right and that water so obtained could be sold. We have operated thereunder for more than fifty years. Property rights thereunder have been acquired and sold. Under the rule of *stare decisis,* where property rights are involved, the courts are reluctant to engage in judicial legislation. If there is to be a change, it should come by action of the legislature. We know that the legislature is studying the problem and we can expect such legislation as it deems advisable in the interests of all of the people in the state.

The *Huber* decision has been severely criticized by some courts and by several writers. Most of that criticism is directed at the determination therein that an owner may waste water with malice toward his neighbor as his motive. It is unnecessary to give attention to such criticism because neither waste nor malice are issues in the case before us.

We must agree with the trial court that the result of the proposal of the city to withdraw water from the underground basin is unknown and that an injunction should not be granted under the circumstances.

*By the Court.*—Order affirmed.

FAIRCHILD, C. J. (*dissenting*). The majority opinion is grounded upon the thoroughly discredited decision of this court in *Huber v. Merkel* (1903), 117 Wis. 355, 94 N. W. 354, which I consider it is the duty of this court to repudiate by expressly overruling the same.

The plaintiffs in this case seek the aid of equity in protecting their property rights in the percolating waters from which they draw their water supply. They are entitled to such protection regardless of whether or not the legislature ever exercises its police power to regulate percolating waters.

3 Farnham, Waters and Water Rights, p. 2718, sec. 938, makes this observation with reference to *Huber v. Merkel*:

"There is absolutely no principle on which that decision can be founded. It is opposed to good morals, good sense, and all common-law principles which are applicable to analogous subjects, and the later and better considered cases are beginning to recognize correlative rights in percolating waters and confine landowners to a reasonable use of it."

Even more caustic is the following comment of the Minnesota court in *Erickson v. Crookston Waterworks Power & Light Co.* (1907), 100 Minn. 481, 489, 111 N. W. 391:

"The merits of that opinion [*Huber v. Merkel*] justify little more than reference to it."

In the case of *Hathorn v. Natural Carbonic Gas Co.* (1909), 194 N. Y. 326, 87 N. E. 504, property owners, who were obtaining water from naturally flowing springs, brought an action in equity to restrain the defendant corporation from accelerating, or increasing by means of pumps and other apparatus, the flow of water and carbonic-acid gas from their own deep wells so as to destroy or diminish the flow of water in plaintiffs' springs. The lower court entered an order granting to the plaintiffs a preliminary injunction. The defendant corporation appealed and cited *Huber v. Merkel.* The New York court of appeals affirmed, and in its decision it reviewed *Huber v. Merkel,* and made this statement with respect thereto (p. 339) :

"If, however, some of the broad statements made in the opinion [in *Huber v. Merkel*] should be deemed pertinent to such facts as are disclosed here and to sustain the right of a proprietor to use at will subterranean waters under the circumstances disclosed in this case, it must be said, as was intimated in the Wisconsin case itself, that the courts of this state and of that one disagree on this subject."

The rationale of the *Huber v. Merkel* decision was that a property owner has the unlimited right to make whatever use of his own property he sees fit. This is directly counter to the principle so long recognized in the law of nuisance that one must not so unreasonably use his own property as to injure that of another. This principle is well stated in 6-A American Law of Property, p. 65, sec. 28.22, as follows:

"Since the rights of neighbors are correlative, the uses of one must not impair the substantially equal uses of the others. The balance between their interests is struck by the maxim— *sic utere tuo ut alienum non laedas.* When the balance is upset by an activity which exceeds the bounds of reasonable-

ness and does substantial and disproportionate injury to the peaceable possession of others, such activity is said to be a nuisance and is actionable by those whose property interests it impairs."

The case whose facts are probably most nearly parallel to those of the instant case is that of *Schenk v. Ann Arbor* (1917), 196 Mich. 75, 163 N. W. 109. In that case the city of Ann Arbor acquired 130 acres of land in a marsh area some three miles distant from the city, under which were beds of water bearing gravel, for the purpose of augmenting the city's water supply. Test wells were driven by the city and some 3,700,000 gallons of water were pumped daily for a while from such wells. As a result the wells of some of the adjoining landowners went dry and the water supply in other near-by wells was seriously diminished. The plaintiff was an adjoining landowner and brought an action against the city for an injunction. At the time of trial the city was then not pumping water, and, therefore, plaintiff was sustaining no damage. Because of this the lower court denied an injunction. The Michigan supreme court held that the city had the right to drill and remove water from non-adjacent property, but that such was subject to the reasonable-user rule. The judgment below was modified by directing the circuit court to retain jurisdiction in equity so as to permit the plaintiff and all members of the class to apply for relief in the event of sustaining future harm from the further pumping operation of the city.

I believe that the rule laid down in *Schenk v. Ann Arbor* provides a precedent which should be followed by this court in the instant case. As this matter comes to us as the result of the interposition of the demurrer by the defendant city, such demurrer should be overruled and a trial be had on the merits.

I am authorized to state that Mr. Justice CURRIE joins in this dissent.